MATTHEW WHITE, Respondent, *v.* JAMES RINTOUL, Appellant.

*It seems* a promise to pay a debt of another antecedently contracted, where the primary debt still subsists, is original and so valid within the statute of frauds, although not in writing, when it is founded on a new consideration moving to the promisor and beneficial to him, and when by the promise he comes under an independent duty of paying, irrespective of the liability of the principal debtor.

Plaintiff was the owner of two notes executed by the firm of W. & R. Defendant's son was a member of the firm. Before their maturity defendant requested plaintiff to forbear any effort to collect them for a specified period, promising if he would do so to pay the amount thereof. Plaintiff did forbear. In an action upon the promise, it appeared that said firm was in debt and the business not successful; that defendant was a creditor but held a chattel mortgage on its property as security. Plaintiff testified in substance, that at the time of making the promise defendant stated that he had advanced all the money for the business of the firm, for which he had a mortgage, or would get one; that if plaintiff tried to collect his debt he would not be able to get anything, and the only and best way was to give the firm time; that he (defendant) had security for the amount due him and that was the first to be paid out of the firm and plaintiff could not get anything anyway; also, that defendant stated he would lose his money if plaintiff forced a collection. It did not appear but that defendant's claim was due at the time, or that his security was inadequate, or that any consideration of benefit moved to him from either party. *Held*, that the promise was collateral and void within the statute of frauds.

(Argued December 21, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made January 7, 1885, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This action was brought upon an alleged verbal promise of defendant to pay the amount of two notes owned by plaintiff and made by the firm of Wheatcroft & Rintoul.

The material facts are stated in the opinion.

*Albert Stickney* for appellant. A promise to pay the debt of another, having a mere promise of forbearance to sue the original debtor for a consideration, is within the statute of frauds. (*Jackson* v. *Rayner*, 12 Johns. 291; *Mallory* v. *Gillett*, 21 N. Y. 412; *Roe* v. *Barker*, 82 id. 431; *Leonard* v. *Vredenburgh*, 8 Johns. 29; *Prime* v. *Koehler*, 77 N. Y. 91; *Brown* v. *Weber*, 38 id. 187; *Kingsley* v. *Balcome*, 4 Barb. 138; *Fullam* v. *Adams*, 37 Vt. 391; *Maule* v. *Bucknell*, 50 Penn. St. 39; *Waldo* v. *Simonson*, 18 Mich. 345; *Mallett* v. *Bateman*, 16 C. B., N. S. 543; *Ames* v. *Foster*, 106

Mass. 400; Brown on Statute of Frauds, §§ 197, 212, 214, 214 *a;* Throop on Validity of Verbal Agreements, 610, 638.)

*Arthur R. Robertson* for respondent. Where an action is brought on a contract, without disclosing whether the contract is oral or written, defendant is bound to plead the statute of frauds to avail himself of its protection. (*Porter* v. *Wormser,* 94 N. Y. 431, 450; *Southwick* v. *First Nat. B'k of Memphis,* 84 N. Y. 428, 429; *Brazill* v. *Isham,* 12 id. 9, 17; *Rowe* v. *Comley,* 2 Code of Civ. Pro. R. 426.) Even if the statute of frauds had been pleaded by defendant, and defendant were in a position to raise the point that his promise was not in writing, the point would not be good; for no writing was necessary. (*Mallory* v. *Gillette,* 21 N. Y. 412; *Nelson* v. *Boynton,* 3 Metc. 396, 400; *Leonard* v. *Vredenburgh,* 8 Johns. 29; *Emerson* v. *Slater,* 22 How. 28, 43; 3 Parsons on Cont. [5th ed.] 24; *Cordell* v. *McNeill,* 21 N. Y. 336; *Ackley* v. *Parmenter,* 98 id. 425; *Prime* v. *Koehler,* 77 id. 91, 94, 95.)

FINCH, J. The doctrine prevailing in this state which serves to distinguish between original and collateral promises in cases arising under the statute of frauds has been reached in three stages. Each was a definite and deliberate advance toward a more faithful observance of the statute, and an abandonment of efforts to narrow the just and natural range of its application. When, by some authorities, it was said that a verbal promise to pay the debt of another was always collateral and invalid if the primary debt continued to exist concurrently with the promise, a simple and easy test was furnished to determine whether the statute did or did not apply. But when that test was discarded, and it became the law that a promise to pay another's debt might be original although that debt subsisted and was in no manner extinguished, the presence of such continued liability raised a cloud of doubt and ambiguity which perhaps will never be entirely dissipated. The argument in the present case has so reached back to the

foundations of the controversy, and challenged or construed what has been said and ruled, as to make both useful and necessary a study of the path which the courts of this state have followed. The plaintiff has recovered upon a verbal promise to pay the debt of another, and seeks to maintain his position in part upon the definition of an original promise framed in the old and familiar case of *Leonard* v. *Vredenburg* (8 John. 29). That definition assumed as the test of an original promise that it was founded on a new or further consideration of benefit or harm moving between the promisor and promisee. There was found in this some inaccuracy of expression. For since every promise must have some consideration to be valid at common law; and that necessary and inevitable consideration, wherever the debt to be paid antecedently existed, is always "new" and "further" because different from that of the primary debt; and since also such new consideration does frequently move between the newly contracting parties, giving benefit to promisor or harm to promisee; it became apparent that the terms of the definition were dangerously broad and capable of a grave misapprehension, making it almost possible to say that a promise good at common law between the new parties was good also in spite of the statute.

This difficulty was disclosed and measured, and then remedied in *Mallory* v. *Gillett* (21 N. Y. 412), by a divided court, it is true, but upon a prevailing opinion so strong in its reasoning and so clear in its analysis as to have commanded very general approval. The case was one where, in reliance on the promise made, the promisee had released to his debtor a lien which gave his debt protection. Within the language of the rule in *Leonard* v. *Vredenburg* the promise was original and not within the statute, since the consideration which supported it was "new" and "further" and passed between the newly contracting parties, and consisted in the harm to the promisee involved in the surrender of his lien. But the promise was nevertheless held to be collateral, and the earlier definition modified so as to require that the new consideration should

move *to* the promisor and be beneficial to him. This change shut out at once from the class of original promises all those in which the consideration of the promise was harm to the promisee, and the resultant benefit moved to the debtor instead of the promisor. The ground of the doctrine thus asserted was explained by the test then prevailing in Massachusetts, declaring the promise original where its leading and chief object is to subserve or promote some interest or purpose of the promisor himself, and upon which the respondent very much relies. (*Nelson* v. *Boynton*, 3 Metc. 396.) That this expression was understood to mean, not merely some moral or sentimental object, but to relate to a legal interest or purpose tangible by the law and a product of the consideration received from creditor or debtor is apparent from the further current of the explanation. The learned judge contrasts a case in which the consideration benefits the debtor, but in it the promisor has no personal interest or concern, with one in which the consideration is the product of some new dealing between creditor or debtor and promisor, and in which the latter has a personal interest. That is what he means by a consideration of benefit moving to the promisor, and to obtain which is the object of the promise. But the rule thus stated and explained was again narrowed and restricted. In *Brown* v. *Weber* (38 N. Y. 187), it was asserted that a promise might still be collateral even though the new consideration moved *to* the promisor and was beneficial to him. It was distinctly said that the existence of those facts would not in every case stamp the promise as original, but the inquiry would remain whether such promise was independent of the original debt or contingent upon it. The court added, "the test to be applied to every case is whether the party sought to be charged is the principal debtor primarily liable, or whether he is only liable in case of the default of a third person, in other words whether he is the debtor, or whether his relation to the creditor is that of surety for the performance by some other person of the obligation of the latter to the creditor."

If this statement was not needed for a determination of the

·case, or the generality of its language left it debatable what precise limitation or qualification was intended to be added to the rule of *Mallory* v. *Gillett,* both difficulties were removed by the recent case of *Ackley* v. *Parmenter* (98 N. Y. 425), in which RAPALLO, J., states with precision and accuracy the doctrine of the court. The debt there was the debt of one Silliman, and the verbal undertakings were held to be within the statute, unless the defendant, before making the promise, had so dealt as to make Silliman's debt his own, or had incurred a duty to pay the amount owing from Silliman to the plaintiff. It was added, relatively to one possible view of the facts, that the plaintiff's undertaking was to pay out of the proceeds of the stock, and his duty to pay would not arise until he had converted the stock into money. "Consequently," it was concluded, "at the time of the alleged promise he was under no present duty to pay and the promise, though founded on a good consideration (viz., the adjournment of the sale), was nevertheless an undertaking to pay the debt of another."

These four cases, advancing by three distinct stages in a common direction, have ended in establishing a doctrine in the courts of this state which may be stated with approximate accuracy thus, that where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment irrespective of the liability of the principal debtor.

The question in the present case was raised in three ways. At the first effort to prove a verbal promise to pay the debt due plaintiff, the objection was made to the evidence that if any promise was to be proved it must be in writing. The objection was overruled and an exception was taken. After the conversation had been stated, which culminated in a promise, the defendant moved to strike out that part of the answer which detailed the verbal promise. That motion was denied and the defendant again excepted. At the close of the plaintiff's case there was a motion for a nonsuit upon the

ground that the promise was not in writing and was, therefore, within the statute of frauds; and also upon the ground that there was no evidence that the promise was for the promisor's special benefit. The motion was denied and again an exception was taken. Finally, at the close of the evidence, the court was asked to direct a verdict for the defendant, which was refused and the defendant excepted. I do not think that any of these exceptions were waived by the defendant's subsequent request to charge. The case went to the jury against his objection and upon a theory to which he in no manner assented, but, even upon that theory to which the court drove him, he had a right to claim that he was not liable, and ask a charge which might give him protection without at all waiving his position upon the law.

We are, therefore, to bring the facts of the case to the test of the rule above stated, and in doing so, we are to take them from defendant's own lips, to treat as true his representations as detailed by his adversary, and to draw from the evidence every possible inference which is favorable to the plaintiff's case. The firm of Wheatcroft & Rintoul, of which defendant was not a member, became indebted to the plaintiff in the amount of two notes; one dated June 1, 1880, and maturing September 4, 1880; and the other dated July 1, 1880, and to become due October 4, 1880. On the 16th of August, 1880, and so before the maturity of either note, the defendant requested the plaintiff to forbear any effort at their collection until June or July, 1881, promising, if the plaintiff would do so, to pay the amount of the notes. The plaintiff did forbear and now sues upon the promise. The courts have held many times, that a promise upon consideration of forbearance to sue the debtor is not original, and to be valid must be in writing.

In *Ackley* v. *Parmenter (supra)*, it was said, "forbearance or indulgence to the debtor, even at the request of the promisor, will not support a verbal promise by a third party to pay the debt." If there were nothing more of the case than has been thus far stated, it would be very clear that the plaintiff ought to have been nonsuited. But there are further

facts upon which it was found that the sole object of the defendant was to subserve some purpose of his own. I do not recognize that as either a test or a rule. "Some purpose" might mean one of morals or sentiment, of gratitude or pride, and to subserve such purpose might be the sole object of the promise, and then by submitting the question to the jury, it would be easy in every case to defeat and evade the statute. But neither the court below nor the plaintiff's counsel meant so loose a doctrine. What they did mean was that on the facts it was possible to say that the forbearance of the plaintiff to sue, was not merely a benefit to Wheatcroft & Rintoul, but that defendant was so situated relatively to that firm, that the plaintiff's delay was a benefit to the defendant personally, which he contracted for in his own interest, and obtained by means of his promise.

One member of the debtor firm was the defendant's son, and that firm was somewhat in debt and not managing the business successfully or satisfactorily. The defendant was a creditor of the firm. He had loaned to them something over $5,000, for which he held as security a chattel mortgage on the fixtures and machinery of the firm. He was, therefore, to some extent at least, a secured creditor. He represented to plaintiff that he had advanced all the money for the business of the firm; that he was determined to get rid of his son's partner who was drawing money that was his money; that the business was not paying and he wanted to give it up or he was going to conduct it alone or through his son; that if plaintiff tried to collect his debt he would not be able to get anything; that there was a chattel mortgage against the property; that he had furnished money himself for which he had a mortgage or would get one and plaintiff could not get anything; that the only way and the best way would be to give the firm time; that it was late in the season and by waiting until the next summer they could sell their beer and that he would pay plaintiff for the two notes. That is plaintiff's account of the conversation given on his direct-examination. On his cross-examination he added that defendant said he had

a claim or a confession or a mortgage or some security for the amount of money due him and that plaintiff could not get anything anyway; and that the money that was due defendant, was the first to be paid out of the firm. Upon the basis of this evidence the plaintiff contends that the defendant had a direct personal interest in procuring a forbearance to sue the firm which he explains in his brief by saying, "that if the plaintiff pressed the collection of the notes, and did not wait till the then next summer defendant would lose his money" which had been loaned to the firm. But I do not discover a single fact in the case which tends to any such conclusion. I have not overlooked the proof that the plaintiff, while saying nothing of the sort in his first detail of defendant's words, did later add that defendant declared he would lose his money if plaintiff forced a collection. But this was merely an expression of an opinion or fear, not only without anything to justify it, but in direct contradiction of every fact bearing upon the situation, and indicating defendant's relations with the firm. It was a fear without a foundation; a state of mind and not a result of existing facts seen in their legal bearing. The defendant was a secured creditor of the firm. Delay on the part of plaintiff is not shown to have been of the slighest consequence to the interest of defendant. It is not pretended that his security was inadequate. Beyond that he asserted that he was to be first paid, and that plaintiff could get nothing if he sued. When the conversation took place the first note had not matured and could not be sued under about a fortnight. It is not suggested or shown that defendant's claim was not due, and there was ample time if further security was needed to sue and levy in advance of plaintiff. That delay by the latter was in the slightest degree material to the safety of defendant's debt is a purely gratuitous assumption. The evidence is all to the exact contrary. The motive disclosed was regard for his son and desire that his business credit should not be damaged by a failure. The purpose for which he sought delay was wholly in the interest of that son, and to enable him to market his beer the next summer and so pro-

cure the means to pay the plaintiff without sacrifice or discredit. The debt of the firm was in no sense defendant's debt. No consideration of benefit moved to him from either party, and least of all had there been any new dealing with either which put upon him a duty of payment. Before the promise was made he owed no such duty and came under no such obligation. The doctrine of this court clearly stamps the promise as collateral and void for want of a writing. Indeed, the proof shows that the plaintiff himself did not mistake its character. On the 1st of September, 1880, he says defendant called to get his signature to a paper which recited the ownership by defendant of a chattel mortgage on property of Wheatcroft & Rintoul, and although he signed it he testified, "my remark that I did not want to sign the paper was caused by my surprise that the man should ask me to sign that paper *when he had just guaranteed my debt.*" Wheatcroft was present at that interview and called as a witness for plaintiff, and testified that he thought defendant said to plaintiff: "I have already promised to see you paid," and added that the words were distinctly impressed upon his memory. John Flintoff was also present at that conversation and was called by plaintiff, relating its language thus: "But, said Mr. White, you said you would see me paid, and Mr. Rintoul assented to the proposition; he said, for the matter of that I said I will see you paid." So that not only do no facts appear which make defendant's safety depend upon plaintiff's forbearance, but the very promise itself by the plaintiff's own admission and the recital of his witnesses was a guaranty of the firm's debt and contingent upon non-payment by them. The case is one in which a faithful observance of the statute of frauds requires us to say that the promise sued on is void for want of a writing.

The judgment should be reversed, and a new trial granted, costs to abide event.

All concur.

Judgment reversed.