---

## W. T. MERSEREAU CO. v. WASHBURN.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

STATUTE OF FRAUDS—PROMISE TO PAY DEBT OF ANOTHER.
    Where contractors refused to go on with the work after completing half of it, because the owner had not made the stipulated payments, a parol promise by a mortgagee of the property to pay or see paid the contract price for the last half of the work on its completion is not within the statute of frauds. Ingraham, J., dissenting.

Appeal from circuit court, New York county.

Action by W. T. Mersereau Company against Wilbur F. Washburn on a contract between defendant and plaintiff's assignor. From a judgment entered on a dismissal of the complaint, and from an order denying its motion for a new trial, plaintiff appeals. Reversed.

The complaint alleged: That on June 22, 1891, a contract was made between W. T. Mersereau & Co., plaintiff's assignors, and Elizabeth Steinmetz, whereby said firm agreed to complete work on certain houses at 103d street and Amsterdam avenue for $800; $400 to be paid by Steinmetz when half the work should be completed, and the balance, $400, within 30 days after the work was satisfactorily completed. That on August 27th Steinmetz paid $300 on account of one-half of the work then completed, leaving a balance due of $100. That upon her failure to pay such $100 said firm refused to proceed with the completion of the work unless Steinmetz paid the $100 then due. That thereupon this defendant promised and agreed with said firm that if it would continue the work, and complete the same pursuant to the contract, he, the defendant, in consideration thereof, would pay the said firm the $100, and thereafter, and upon the completion of the work pursuant to the contract, he would pay the balance of $400. The complaint further alleges that on September 15, 1891, Elizabeth Steinmetz, through her agent, Welcome R. Steinmetz, made with defendant a contract whereby she agreed to execute and deliver to defendant a mortgage for $4,269.53 on Nos. 771 to 779 West End avenue, and a deed of No. 308 West 103d street, in consideration whereof the defendant agreed that he would pay certain claims and debts due and owing from the said Welcome R. Steinmetz and said Elizabeth Steinmetz to various persons, and also agreed and promised to pay the amount due or to become due upon said contract between said firm and said Elizabeth Steinmetz, being the said sum of $400 for the second half of said work therein mentioned, and which sum of $400 the said defendant promised and agreed to pay to said firm as a part consideration of the execution and delivery of said mortgage and deed to the defendant. In support of these allegations the evidence was: That plaintiff's assignors, by their contract with Steinmetz, were to put the tilings, linings, and frames in all the houses, nine in number; and that one-half the work was done in August, upon which $300 was paid, leaving $100 due for the first half of the work. That they refused to proceed further with the other half, and that defendant said "he would pay us the $100 if we would go on with the work, and, * * * relative to the payment of the balance of the contract price when the work was completed, that he would pay it. * * * The substance of it was that he would pay the money when the work was completed, and thereafter he did pay the $100. The work was completed about the beginning of September." This witness, on cross-examination, however, varied his testimony, and thus described the transaction: "It was simply this: I flatly refused to do any more work until the $100 was paid. That is what I said. He said that he would pay the $100, and see that we were paid the balance." The evidence further showed that this $100 was paid by a check to the order of Steinmetz, though the check had a statement upon it that it was for account of plaintiff's assignors. John H. Steinmetz testified that the firm refused to go on with the work unless they got their money. "That is the reason I went up there with Mr. Washburn, and he told them he would pay the balance when the work was completed." The firm's bookkeeper testified that the defendant said, "You hurry up with the balance of the work, and I will pay you the balance of the money." Other testimony was given to the effect that in September Steinmetz executed to the defendant three deeds, covering separate houses, two of which were for prior advances, and one being given in consideration of an agreement upon the part of the defendant that he would pay certain claims due material men, which were entered upon a list furnished to the defendant, and which included the claim of plaintiff's assignors. The defendant was sworn as a witness by plaintiff, and cross-examined, and he denied having made any promise to pay the $400 balance due; and also de-

.nied that the consideration for the deed, in addition to the two received by .him for past indebtedness, was to pay a list of claims, including that of the ·plaintiff's assignors; his version of the transaction, in effect, being that he ·received the deed under a written contract, which was produced and marked ·in evidence, and which recites the simultaneous execution and delivery of the deed as a consideration for the loan to Steinmetz of $1,693, for which ·the deed was to be held as security, and was to be construed as a mortgage.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, :and INGRAHAM, JJ.

Edwin R. Leavitt, for appellant.
William H. Sweny and Roger Foster, for respondent.

O'BRIEN, J.    In view of this written agreement, we think the 'learned trial judge was right in striking out all parol evidence which tended to vary or contradict it, and we are thus left to con- sider the evidence upon the other branch of the case,—as to the ·effect of the defendant's promise to pay the $400 remaining due to plaintiff's assignors, provided the latter would go on with the work.    The complaint having been dismissed, the appellant is ·entitled to have the most favorable inferences drawn from the tes- ·timony; and, if such would warrant a submission to the jury, it was error to dismiss.    Although it is not specified, the theory upon ·which the learned judge undoubtedly proceeded was that, while ·there was testimony tending to show that such a promise was ·made, it was one within the statute of frauds, and therefore not enforceable.    The question, therefore, presented upon this appeal is, did such evidence tend to support a new and original agree- ment upon the part of the defendant with the plaintiff's assignors, ·or was it a collateral agreement to answer for the debt of Stein- metz?    In view of the masterly summary of the law upon this sub- ject by Comstock, C. J., in the leading case of Mallory v. Gillett, .21 N. Y. 412, which has been cited with approval, and followed ·down through a long line of cases, it only remains for us to apply the principles therein enunciated.    There, as appears by the head- note, "the plaintiff, having in his possession a canal boat belong- ·ing to A., and having a lien upon it for repairs made by him, de- ·livered the boat to A., at the defendant's request, and upon his ·verbal promise to pay the amount due for such repairs"; and it was ·held that, there being no new consideration moving to the defend- ant, his promise was void under the statute of frauds.    After ·enumerating and commenting upon the divisions into classes of the cases not within the statute by Chief Justice Kent in Leonard v. Vredenburg, 8 Johns. 29, the opinion proceeds as follows (page 419):

"In the third class, the consideration, whatever its nature, moves to the ·person making the promise; and that, also, as in all other cases of contract, may consist of benefit to him or harm to the party with whom he is dealing. ·This distinction is also extremely well expressed by Chief Justice Shaw of ·the supreme court of Massachusetts.    One class of cases (within the statute) he says, is 'where the direct and leading object of the promise is to become ·the surety or guarantor of another's debt'; the other class (not within the statute) is 'where, although the effect of the promise is to pay the debt of :another, yet the leading object of the undertaker is to subserve or promote

some interest or purpose of his own.' Chief Justice Savage, in this state (Farley v. Cleveland, 4 Cow. 432, 439), made the same classification. 'In all these cases,' he observed, referring to those which fall within the third class, "founded on a new and original consideration of benefit to the defendant or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery.' In one respect this language of Chief Justice Savage has greater precision than that of Chief Justice Kent. The latter speaks of the consideration as 'moving between the newly-contracting parties.' The former characterizes it as moving to the party making the promise. This description is more exact, as well as more comprehensive, because it includes a variety of cases found in the books, where the new consideration springs from the original debtor, and not the creditor; as, for example, where the debtor, by conveyance of property or otherwise, places a fund in the hands of a third person, the latter promising in consideration thereof to pay the debt. * * * Where the promise, in this particular description of cases, has been made directly to the creditor, the only question has been on the statute of frauds; and the rule is very properly settled that they are not within the statute."

And on page 422 of the opinion is quoted with approval the reporter's note in Farley v. Cleveland, supra, as follows:

"Where a promise to pay the debt of a third person arises out of some new consideration of benefit to the promisor or harm to the promisee, moving to the promisor, either from the promisee or the original debtor, such promise is not within the statute of frauds, although the original debt still subsists, and remains entirely unaffected by the new agreement."

And in Walker v. Hill, 119 Mass. 249, the facts were (as correctly stated in the headnote):

"A. entered into a written contract with B., by which B. agreed to build a house and barn for A., and do all the carpenter work, and furnish all the materials, for a gross sum. B. afterwards ordered of C., in his own name, the windows and doors necessary for the house and barn, and, after some of them were delivered and placed in the buildings, A. called at C.'s shop to get the rest of the windows, and was told by C. that he had doubts of B.'s solvency, and had concluded not to trust him for the goods, and for that reason had withheld the remaining windows; and A. thereupon directed the plaintiff to send the goods to B., and charge them to A., and promised to pay for them. C. afterwards gave no credit to B., but wholly to A., but did not inform B. of the conversation, and afterwards delivered the goods to B. as he called for them. Held, in an action by C. against A., that the jury were warranted in finding that the promise sued on was a promise to pay the defendant's own debt, and not a promise to answer for the debt of another within the statute of frauds."

Here the defendant made no contract to build the houses, but the testimony shows that he had a large pecuniary interest in having them completed, and such interest was as substantial as though he had the same amount of money involved in a transaction connected with the building of the houses by himself. The facts of the case at bar are stronger than those in the case cited, for the reason that the agreement here was with the knowledge of Steinmetz; and therefore no question could arise, as did in that case, as to the liability of either of the contracting parties to Steinmetz for damages upon any alleged breach of the contract to furnish the same material to him. It might be urged, then, that the effect of the transaction was to rescind or cancel the contract between the plaintiff's assignors and Steinmetz, and to substitute a new and original agreement, by the terms of which, in consideration of the defendant's promise to pay the $400, the plaintiff's assignors un-

dertook to and did supply the material and do the work remaining to be done on the houses. And the fact that they had formerly made a similar contract with Steinmetz would not affect the defendant's liability, because that contract, we think, was out of the way. But, even if we assume that the obligation of Steinmetz was continued, and not extinguished, yet, within the third class enumerated in Mallory v. Gillett, supra, the jury might infer that the new promise of the defendant was founded upon a consideration moving directly to him from the promisees, namely, that they would go on and perform the labor and furnish the material to complete the half-finished work. "Where the primary debt subsists, and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor." White v. Rintoul, 108 N. Y. 227, 15 N. E. 318. That the defendant was interested in having the buildings completed is shown by his testimony, already referred to: "We were anxious to get the title to my houses, in order to save $30,000 in jeopardy" that he had secured by mortgage on the nine houses, upon which there was a first mortgage of $166,000. If the transaction, then, between the parties, was as detailed by the plaintiff's agent on his direct examination, supported as it was by two other witnesses, there was sufficient to go to the jury upon the question as to whether the defendant did not enter into a new and original agreement which was not within the statute of frauds. The agent, however, upon cross-examination, slightly varied his testimony, and stated that what the defendant said was "that he would pay the $100, and see that we were paid the balance." This variation in the testimony did not change the nature of the obligation which the defendant assumed, because, whichever form of expression was used, it was evidence tending to support the view that the defendant, for his own benefit, after the plaintiff had refused to go on with the work, entered into a new and independent contract upon a new consideration, which was, therefore, a direct promise to pay his own debt, and not a collateral promise to pay the debt of another. This variance, it is urged, was fatal to the plaintiff's right to recover upon the authority of Turenne v. Washburn (Sup.) 19 N. Y. Supp. 753, which was a similar action, brought by another material man against this same defendant. If that case is not to be distinguished, then it must be regarded as overruled by that of Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516. There, as here, a subcontractor, having refused to go on with his portion of the work because he had not been paid by the contractor, was visited by the owners of the buildings, who stated "that they wanted them finished, and that, if the plaintiffs would go ahead, and deliver the rest of the material, they would see them paid therefor; that, if Squier and Whipple did not pay, they would take it out of the amount going to them, and would pay the plaintiffs." In discussing the liability of the promisors under this agreement, Judge Haight, in his opinion, says:

"The promisors were the owners of the buildings in process of construction. The woodwork furnished by the plaintiffs was for their benefit. The contractors had neglected to pay the plaintiffs for material furnished, and they refused to deliver more, as they had a right to do. Under such circumstances the promise was made, and it was in reliance upon the promise that the plaintiffs delivered the rest of the woodwork. The promise thus made was original, and founded upon a new consideration,—that of the goods. It was beneficial, as we have seen, to the promisors; thus bringing the case within the rule stated by Finch, J., in White v. Rintoul, supra."

This case is a direct authority, and in principle controlling.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and RUMSEY, J., concur.    INGRAHAM, J., dissents.