OGDEN et al. v. SERGEANT.

(Supreme Court, Appellate Term. November 30, 1909.)

1. FRAUDS, STATUTE OF (§ 33*) — PROMISE TO PAY FOR BUILDING MATERIAL BOUGHT BY CONTRACTOR—WHAT MUST BE SHOWN TO RECOVER THEREON.

Where plaintiffs' claim against defendant is based on an express promise, not in writing, to pay for materials bought by a contractor for defendant's building, plaintiffs are bound to establish that defendant promised to pay the debt of the contractor, that the promise was based on a beneficial consideration moving to himself, and that it was independent, and not a mere guaranty, on a new and beneficial consideration.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

2. FRAUDS, STATUTE OF (§ 159*)—ACTION ON PROMISE TO PAY FOR BUILDING MATERIAL—INSUFFICIENCY OF EVIDENCE.

Evidence for plaintiff *held* insufficient to go to the jury in an action based on an express promise, not in writing, to pay for building material bought by a contractor for use in defendant's building.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 378; Dec. Dig. § 159.*]

Gildersleeve, P, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by Frederick J. Ogden and another against William L. Sergeant. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

See, also, 112 N. Y. Supp. 1085.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Bouvier, Dugro & Doyle (John B. Doyle and Dudley Davis, of counsel), for appellant.

John Oscar Ball (A. B. Bachman, of counsel), for respondents.

LEHMAN, J. The plaintiffs sold and delivered materials to the Structural Concrete Company at the agreed price of $1,088.53, and these materials were used in two buildings, one of which belonged to the defendant and the other apparently was in his charge. There is no claim that the defendant is under any obligation to pay for these materials except by virtue of an express promise to pay, which the plaintiffs claim he made to them about April 30th. Concededly no written promise was made, and therefore the plaintiffs are bound to establish (1) that the defendant did promise to pay this debt of the Structural Concrete Company; (2) that this promise was based upon a beneficial

consideration.moving to himself; (3) that it was an independent promise to pay, and not a mere guaranty, upon a new and beneficial consideration. White v. Rintoul, 108 N. Y. 222, 15 N. E. 318; Brown v. Weber, 38 N. Y. 187. In order to show these facts, the plaintiff's bookkeeper testified that about the 17th day of April, 1907, he called upon the defendant, and the defendant then told him that on the 11th day of April he had taken charge of the work, and that after that time he was to pay for all the material delivered on those houses; that the bookkeeper then asked, "What about the material delivered before that time?" and the defendant said that he had never paid any money over to the Structural Concrete Company, as no payments were due until the houses were finished, and that, according to his estimate, he would have $5,000 or $6,000 left over to be handed to the Structural Concrete Company after the houses were finished. "So then I asked him again if we would get our money. He said, 'You will, I have the money here, and I have ample money to complete the houses right through to the end, so that they are ready for occupancy.' He said he would pay Ogden and Cadmus their bill, because he had the money to pay them with. He said: 'Go ahead, and furnish all the material, and send all the bills to him and he would pay them.' He said that he would see that we got the money, even if he had to draw up a friendly stop notice himself and get Ogden & Cadmus to sign it." In this statement of the bookkeeper's testimony I have stated verbatim everything that might possibly establish the defendant's promise. Possibly this conversation is open to the construction that, relying upon the estimates, he felt so sure of a surplus due to the Structural Concrete Company that he agreed absolutely to pay their debt, but there is no evidence of consideration for this promise. The plaintiffs were not asked, and did not promise, to furnish the materials required for the completion of the buildings as a consideration for this promise, but were simply told that the defendant would personally pay for any materials furnished thereafter. In this respect the bookkeeper's testimony on cross-examination is very material. He said:

"We are not the exclusive dealers or sales agents of that material within a radius of 10 miles of Nutley. There are other persons or firms within a radius of 10 miles of Nutley that can supply that material. * * * I did not tell Mr. Sergeant on that occasion that our firm would not supply him with any material. I did tell Mr. Sergeant on that occasion that we would continue to supply him with material. I did not give him an estimate of how much material he would need to finish the houses. He did not tell me how much material he would need. * * * We did not have any objection to taking Mr. Sergeant's orders for additional material on that interview. Not on his own account. We believed that his account was good, his personal account. We were willing to take his business. We did not reject it. I did not say that, unless he promised to pay this bill of $1,088, we would not furnish him with any more material. * * * I did not tell Mr. Sergeant anything regarding the filing of a lien on the work. I do not think there was any mention made of a lien."

About two weeks after this interview with the bookkeeper, Mr. Cadmus, one of the plaintiffs, himself called on the defendant. This interview was short. He testified:

"I said: 'You told the bookkeeper the other day that things were all right, and I just came down to verify it,' and he laughed and asked me to take a

seat, and he said: 'Your bookkeeper looked so sad the other day that I actually felt sorry for him.' He said: 'He was afraid he was going to lose his money, and I felt sorry for him, but,' he said, 'I want to say it is all right. You are not going to lose your money. Everything will be all right, and, if you go ahead and furnish me with the rest of these materials, I will see that this bill is paid.' Well, that is about all. It was a short conversation, and I thanked him and went out."

Again, the plaintiff made no promise to do anything, and the defendant's promise is at most a guaranty evidently meant to be gratuitous, and for which the plaintiff thanked him. It cannot even be said that there was consideration for this guaranty in the subsequent furnishing of the rest of the materials, for the defendant had already agreed to pay for these when delivered. This arrangement was satisfactory to the plaintiffs, and the subsequent delivery could therefore not be construed as an acceptance of a unilateral promise. Moreover, on cross-examination, the plaintiff repeated the conversation several times, but without a word appearing therein about furnishing the rest of the materials except that the defendant told him that the materials furnished thereafter were to be billed direct to him. The only other conversation with the defendant was a telephone conversation some time thereafter, wherein the plaintiff "spoke to him about the old bill," and the defendant told him "that he thought everything was coming along fine, and there was no need to worry, and that, as soon as the work was completed, we would get our money."

In addition to this testimony about oral conversations, the plaintiffs have introduced a considerable mass of correspondence. A careful examination of the letters shows that not only do they fail to establish the plaintiffs' contention that in consideration of their continuing delivery of materials the defendant had absolutely promised to pay the old debt, but they affirmatively establish the untruth of this claim. On May 28th the defendant wrote that it was doubtful whether the funds in his hands would be sufficient to pay the plaintiffs' account. On June 13th the plaintiffs wrote that they were surprised at the defendant's communication after his assurance to the bookkeeper and Mr. Cadmus that there would be more than enough money to complete the work, adding:

"This assurance on your part was the cause of us not putting a lien on the houses at that time and not suing the Structural Concrete Company immediately."

Not until August 9th did the plaintiffs write to the defendant, stating their claim that they "continued to deliver materials upon this work upon your assurance that you would pay us for everything that we delivered to these jobs." This letter was prepared after seeing counsel, and shows upon its face that it is a self-serving declaration prepared at his advice.

At the first trial the justice dismissed the complaint. Upon a review of the record, this court stated (112 N. Y. Supp. 1085, 1086):

"Plaintiffs claim that defendant agreed to pay the account of the corporation to plaintiffs in consideration of the latters' not filing a mechanic's lien and of their continuing to supply materials for the job, with which conditions plaintiffs complied. Defendant claims he only agreed to pay the debt of

the defunct corporation in case there should be a surplus·after completion,. which there was not."

The court then held that, however great the weight of evidence may have been in favor of the defendant, there was a question of fact for the jury, citing McDonald v. Met. Co., 167 N. Y. 66, 60 N. E. 282. Apparently the record on that appeal contained sufficient evidence to make a prima facie case in regard ·to consideration.   In the record now presented there is not even a claim that the promise was made in consideration of the plaintiffs not filing a lien; in fact, it affirmatively appears that they maintained all their rights by filing a valid friendly notice with the defendant and in August filed a lien "on advice of counsel"; and there is no evidence that the delivery of materials furnished any consideration.   The complaint should therefore have been dismissed.   In this record I also fail to find more than a scintilla of proof that the defendant made any absolute promise, and I think that the trial justice should not have submitted even this question to the jury, but, if he was bound by the opinion of this court on the earlier appeal, then, in accordance with the cases there cited, it was his duty to set aside the verdict.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

SEABURY, J., concurs in result.

GILDERSLEEVE, P.-J. (dissenting).   The complaint alleges two causes of action:  (1) That plaintiffs at the request of the Structural Concrete Company, a corporation, delivered at the property of defendant certain building materials, for which the sum of $1,088.53 is due and owing; that such materials were delivered with the knowledge and consent of the defendant, and were used in the erection of houses on the property aforesaid for defendant; that thereafter defendant requested plaintiffs to supply further materials for the houses, and promised plaintiffs to pay the bill aforesaid owing by the said corporation to plaintiffs, in consideration for plaintiffs' delivering more materials; that plaintiffs did furnish more materials, but defendant refused to pay the said bill due from the Structural Concrete Company to plaintiffs.   The second cause of action is for the price of the said material so furnished by plaintiffs to defendant.   The sum claimed in the second cause of action has been offered by defendant to plaintiffs, and there appears to be no issue as to that·cause of action.   The answer denies the allegations of the first cause of action with regard to any promise to pay the debt of the Structural Concrete Company, and claims that such alleged promise, if made, was void as a special promise to pay the debt of another for more than $50, of which promise no written memorandum of any kind was made, and "that the buyer at the time of the alleged sale did not accept or receive any part of such goods, nor did the buyer at the said time pay any part of the purchase money."   The jury found for plaintiffs, and defendant appeals.

The facts appear to be substantially as follows:  Prior to April 9 or 10, 1907, plaintiffs furnished building materials to the Structural Con--

crete Company, which was building certain houses for defendant. The said corporation abandoned the job, leaving the debt to plaintiffs mentioned in the complaint unpaid. Some of the material had gone into defendant's houses, and some are claimed by defendant to have been used in a house near by belonging to one Mrs. Morgan, but there is some evidence tending to show that defendant paid the corporation for materials used in the houses both of Mrs. Morgan and defendant. Defendant continued the work, and plaintiffs supplied more materials. The plaintiff claims that defendant agreed to pay the debt of the corporation, which is denied by defendant. There is sufficient evidence that, with the knowledge and consent of the defendant, a large portion at least of the materials furnished by plaintiffs to the corporation were used in defendant's houses. Also there is evidence, which the jury could believe, that the defendant promised to pay the debt of the corporation as a part consideration for plaintiffs continuing to supply materials for defendant's houses after the default of the corporation, and that, in virtue of that consideration, further materials were actually delivered by plaintiffs to defendant and used in defendant's houses, thus constituting performance of the contract on the part of plaintiffs.

The record discloses no errors of vital importance, and the judgment should be affirmed.