### In re MIDVALE GOLF & COUNTRY CLUB, Inc.

### No. 19614.

District Court, W. D. New York.

Feb. 14, 1938.

Burns & Burns, of Rochester, N. Y., (Robert H. Wendt, of Rochester, N. Y., of counsel), for trustee.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y., of counsel), for petitioner.

BURKE, District Judge.

The petition herein brings up for review the decision of the referee in bankruptcy and the order entered thereon disallowing a claim filed by the Collector of Internal Revenue for the Twenty-Eighth collection district of New York. The claim was originally filed for $750.94, with interest, and was reduced by stipulation to $691.02, with interest. The claim was based on taxes on dues and initiation fees pursuant to section 413(a) of the Revenue Act of 1928, title 26 U.S.C.A. § 950, for the period from November, 1929, to August, 1931, inclusive. The trustee in bankruptcy rejected the claim on the ground that it was not entitled to priority, and that the tax was levied against the members of the bankrupt club and not against the club itself. The bankrupt is a membership corporation.

Negotiations looking toward the collection of the unpaid taxes were begun early in September, 1931, between Edward A. Brown, Deputy Collector of Internal Revenue, and Donald Edic, the bookkeeper of the bankrupt club. Pursuant to the negotiations the bankrupt club by its president and treasurer signed a paper (Exhibit 1) which was designated "Waiver of Right to Claim Refund." The exact date that this was signed does not appear either on the paper itself or from the evidence. Just why this was used does not clearly appear. The form evidently did not fit the situation of the parties. It was a standard form used by the Collector of Internal Revenue evidently designed to fit other circumstances. It served one purpose, however, in that it definitely fixed the amount of the unpaid taxes. The amount recited there is $2,791.40. The waiver recited "which amount has been paid." This was not the fact as appears by the evidence. That was the amount of the back taxes that had not been paid and which was the subject of the negotiations. Up to January 5, 1932, the club paid on account $1,561. Some time in January, 1932, the Collector of Internal Revenue issued a warrant of distraint against the club. Thereafter, the club again resumed payment of the back taxes by regular monthly payments, and between January and July of 1932 paid $600 on account, leaving a balance due for which the claim was filed. The question presented is whether the bankrupt club became obligated to pay the unpaid balance of the back taxes.

According to the statute the taxes were originally levied against the members and not against the club. In order that the bankrupt club may be held primarily liable for the payments due on the unpaid taxes which were originally the obligation of the members, three elements must be found to be present: (1) The promise of the club to pay the back taxes must be founded on a new consideration moving to the club; (2) it must be beneficial to the club; and (3) it must be such that the club assumes an independent duty of payment irrespective of the liability of the members. White v. Rintoul, 108 N.Y. 222, 227, 15 N.E. 318; Richardson Press v. Albright, 224 N.Y. 497, 502, 121 N.E. 362, 8 A.L.R. 1195.

When the negotiations between the club and the Deputy Collector commenced, the government was threatening to collect the unpaid taxes directly from the members. The evidence clearly establishes that the club officials were anxious that the government forego any direct action

against the members, because they apprehended by such action disruption of its membership. There is a discrepancy in the testimony as to what was offered· by the club as an alternative. The bookkeeper, Edic, testified that the club was to collect the back taxes from the members for the government. Brown, the Deputy Collector, testified that the club agreed to pay the back taxes. The evidence shows that thereafter the club made payments on account of the back taxes without regard to the amount that it had collected from the members on account of back taxes. It paid the government more than it collected. Thus it appears that the club did' more than act as a collecting agent. The government did forego direct action against the members. No attempt was ever made by the government to collect any of the back taxes against any of the members. The evidence shows that the government looked only to the club for payment. When payment was not forthcoming as fast as the government expected, it issued a warrant of distraint, not against the members, but against the club itself. Even at that time the club did not dispute its obligation but, on the contrary, resumed payments in regular monthly installments. The evidence not only shows that the government agreed to forego direct action against the members, but shows . that it actually did forego such action. The waiver of a legal right, at the request of another, is a sufficient consideration to uphold a promise. Traders' National Bank v. Parker, 130 N.Y. 415, 421, 29 N.E. 1094. The club had a beneficial interest in preventing such direct action because it was fundamentally interested in preserving its membership. The conduct of the parties during the course of the negotiations and the circumstances surrounding the payments show that it was the intention of the parties that the club would undertake an independent duty of payment irrespective of any payments that it might receive from its members on account of the unpaid taxes. Thus all of the elements are present to constitute an independent and primary obligation upon the part of the bankrupt club to pay the obligations of the members for unpaid taxes.

The obligation of the club, however, did not include the payment of interest, but was limited to the face amount of the taxes. The claim should be reduced by the amount of $61.52, which amount is interest, and, as thus reduced, the claim of $630.40 should be allowed as a claim having priority being based upon taxes.

The order entered upon the decision of the referee in bankruptcy is reversed.