MORTIMER KAHN, Plaintiff, v. MOE NAITOVE and LOUIS FUCHS, Individually and as Secretary and General Manager of the United Neckwear Makers' Union, Local No. 250, Defendants.

Supreme Court, Special Term, Kings County, January 18, 1939.

*Harry Dimin*, for the plaintiff.

*Shapiro & Frieder*, for the defendant Moe Naitove.

Conway, J.   Motion by defendant Naitove for summary judgment dismissing the complaint.   It is alleged by plaintiff that on July 16, 1931, five men representing the defendant union drove to his place of business, stepped from a car and threw sulphuric acid over him, permanently injuring him.   Thereafter efforts were made by the union to settle any claims which plaintiff might have against it.   Plaintiff then claims that these efforts proving unavailing, defendant Naitove visited his home and stated to him that he, Naitove, was financially interested in the defendant union and was desirous of effecting, if possible, a settlement of plaintiff's claim. Naitove stated that the union had agreed to pay plaintiff $10,000 for the current year, plus an additional $1,000 to cover the extra expenses of medical and surgical treatments, and that thereafter he, Naitove, and the union would jointly pay $10,000 per year for the rest of plaintiff's life.   This settlement was conditioned upon plaintiff's forbearing to sue the union.   Mr. Naitove, plaintiff states, repeatedly said that he had such an interest in the union that he was willing to and did obligate himself primarily for the amounts stated, and that Naitove stated that, under the circumstances, he did not wish the agreement to be in writing.   This offer was accepted by plaintiff.

Defendant Naitove denies any connection with the union or any agreement on his part to pay any money to plaintiff.

According to Naitove, a man by the name of Roberts called to see him in 1931 at his place of business, the office of S. Naitove & Co., Inc.   At that time Naitove knew nothing of the claim. Roberts told Naitove that there had been some litigation or dispute between the union and plaintiff; that they had come to a satisfactory agreement whereby it was agreed that plaintiff was to receive a certain amount of money.   According to the terms of

the agreement, this money was to be held in escrow and Roberts said plaintiff had urged that defendant Naitove be the escrowee. Naitove at first refused to take part in the matter, but finally consented to hold the money and thereafter received something in the neighborhood of $10,000 to $11,000 from Roberts. This money was later turned over by Naitove to plaintiff. No further payments were ever made to plaintiff.

Plaintiff in this action seeks to recover $50,140 due him for the years 1933, 1934, 1935, 1936 and 1937, and an additional $160,000, based upon an expectancy of life of sixteen years.

Defendant Naitove has interposed a defense that the alleged agreement was one to answer for the debt, default or miscarriage of another, and that there was no writing as required by the Statute of Frauds. It, therefore, becomes necessary to determine whether Naitove's alleged promise was an original one or a collateral undertaking.

Where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor. (*White* v. *Rintoul*, 108 N. Y. 222.) Was there a new consideration moving to the promisor and beneficial to him?

In *Gibbs* v. *Holden* (137 Misc. 480) defendant's son, while driving an automobile negligently, damaged plaintiff and his property. Defendant requested plaintiff not to prosecute his son civilly or criminally and promised that if the plaintiff would not do so, he, the defendant, would pay the plaintiff all his damages. The plaintiff, relying upon this promise, refrained from so prosecuting the defendant's son. Defendant failed and refused to pay the damages suffered by plaintiff upon demand. The complaint in the cited case was dismissed, it being held that there was no beneficial consideration moving to the defendant. The defendant received no money or other property. Not being himself liable for plaintiff's claim against his son, the forbearance on the part of the plaintiff was solely for the benefit of defendant's son.

Plaintiff in the case at bar points out that forbearance is a good consideration for a contract in general, and this is unquestionably true. However, in the *White* case and the *Gibbs* case (*supra*) it was held to be insufficient to take an oral promise out of the Statute of Frauds. As was said in the *Gibbs* case: " Such consideration is insufficient because it consists only in harm to the promisee, while a consideration moving to and beneficial to the promisor is required to make an oral promise enforcible under the Statute of Frauds."

In the *White* case plaintiff owned two notes executed by the firm of Wheatcroft & Rintoul. Defendant's son was a member of the firm, but defendant was not. Before the maturity of the notes, defendant requested plaintiff to forbear any effort at their collection, promising that if plaintiff would do so, he would pay the amount of the notes. The plaintiff did forbear, and in an action against the defendant it was held that a promise upon a consideration of forbearance to sue the debtor is not original and, to be valid, must be in writing.

In *Millard* v. *Steers* (9 App. Div. 419) the defendant was an officer of a bank which was a large creditor of one Abraham Steers. Defendant promised other creditors of the debtor that if a compromise were arranged the defendant would assist his brother, the debtor, in an amount not exceeding $100,000. Notwithstanding the fact that defendant was an officer of the bank, which was a large creditor of the debtor, it was held that there was no consideration of benefit to the defendant, and hence the promise, being oral, was unenforcible because of the Statute of Frauds.

It, therefore, becomes necessary to inquire what consideration of benefit to defendant Naitove there was in the present case. In item 6 of plaintiff's further bill of particulars it is stated:

" Item 6. A cause of action existed in favor of the above named plaintiff against the *defendant Union and/or its predecessor*, including all the members and officers thereof to recover damages for an assault and battery committed upon the plaintiff on the 16th day of July, 1931 in the Borough of Manhattan, New York City. Upon information and belief the defendant, Moe Naitove, in or about and prior to the month of January, 1932, was engaged directly or indirectly, with and was an officer of a corporation which dealt in silk products used in the industry affected by the said Union; with the co-operation of the officers and representatives of the said Union, the defendant, Naitove, was enabled to and did transact a large volume of business *for his corporation*, S. Naitove & Co. Inc., located in the Borough of Manhattan, New York City. By reason of his interest in the well being of the said Union the defendant, Naitove, in or about December, 1931, entered into negotiations with the plaintiff and with the defendant Union, which culminated in the agreement alleged in the complaint, settling the plaintiff's claim and cause of action for damages hereinabove described."

From this it is apparent that plaintiff bases his claim as to Naitove's financial interest in the union upon the alleged fact that defendant Naitove was an officer and/or stockholder of a corporation which transacted a large volume of business through the

defendant union. Even if it be assumed that S. Naitove & Co., Inc., had some financial interest in the union, there is still lacking an element of beneficial consideration moving to defendant Naitove.

In the *Millard* case (*supra*) the defendant was an officer of a bank which made the agreement and which, as a result of the agreement, was enabled to obtain payment of its debt. Here there is nothing to show that S. Naitove & Co., Inc., received any benefit from the alleged agreement and certainly nothing to show that defendant Naitove personally did. Being a stockholder in a corporation which may benefit by the agreement, is only an indirect benefit and not sufficient to take the case out of the Statute of Frauds. Indeed, it is extremely questionable whether there would be a sufficient consideration even if S. Naitove & Co., Inc., were the defendant herein. It is not sufficient that the promisor hopes to obtain some benefit as a result of the contract.

The cases relied upon by plaintiff are clearly inapplicable.

In *Froude* v. *Fleischmann* (178 App. Div. 257) the original debt was canceled as a result of the agreement, and hence the element of the subsistence of the original debt is lacking.

In *Clark* v. *Howard* (150 N. Y. 232) a common debtor of several creditors transferred and delivered to one of them all of his property for distribution. The transferee promised *in writing* to pay another creditor the amount of his debt in consideration of the transfer by the debtor of all his property to the promisor. It was there held that such other creditor, although not privy to the contract or consideration, may, if he accepts and adopts the promise on learning of it, maintain an action thereon against the transferee of the property. The Statute of Frauds was not involved. In fact, the court stated (at p. 237): " There is no question in the case with respect to the Statute of Frauds since the defendant's promise, whatever its legal character may be, is in writing signed by the parties to be charged." Moreover, there was a consideration of benefit to the promisor. All the debtor's property was transferred to him.

Motion granted, with ten dollars costs.