JONATHAN OGDEN BULKLEY and FRANKLIN A. STONE, as Surviving Partners of the Firm of BULKLEY, DUNTON & COMPANY, 1939, in Liquidation, Appellants, *v.* ALBERT SHAW and ALBERT SHAW, JR., Respondents.

First Department, June 27, 1941.

*Sherman Baldwin* of counsel [*Thomas F. Daly* and *Sidney S. Coggan* with him on the brief; *Lord, Day & Lord,* attorneys], for the appellants.

*William C. Scott* of counsel [*Barham R. Gary* and *Donald W. Smith* with him on the brief; *Satterlee & Canfield,* attorneys], for the respondents.

MARTIN, P. J.  The defendants contend that the cause of action alleged in the complaint, being based upon an agreement to answer for the debt of another, is barred by the Statute of Frauds.  The promise of the defendants was not to answer for the debt or default of the Review of Reviews Corporation.  The defendants agreed to advance moneys to the corporation to enable it to finance the anticipated deficit for the six months' period, and, in consideration of the defendants' agreement, the plaintiffs agreed to supply the corporation with paper as needed and to extend credit for a period not to exceed ninety days.  Thus, defendants' promise was to advance moneys to the corporation.  The corporation had not undertaken to advance moneys to itself.  The object of the agreement was to enable the defendants to have time to consider the mode of financing their corporation.

Assuming that defendants' promise is to be construed as a promise to answer for the debt of the corporation, we are of the opinion that the Statute of Frauds is not applicable.  The defendants wholly owned and controlled the corporation and would primarily benefit by performance on the part of the plaintiffs.  In making the promise, defendants were selfishly concerned with promotion of their own interests.  In such a situation the statute is inapplicable.  (*Davis* v. *Patrick,* 141 U. S. 479; *Gotham National Bank* v. *Sharood Co.,* 23 F. [2d] 567.)  In *White* v. *Rintoul* (108 N. Y. 222, 227) it was said: " Where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment irrespective of the liability of the principal debtor."

In dismissing the complaint, the court at Special Term cited, and the dissenting opinion relied upon, *Richardson Press* v. *Albright* (224 N. Y. 497) and *Witschard* v. *Brody & Sons, Inc.* (257 id. 97).  The *Witschard* case is readily distinguishable.  There the defendant Brody & Sons, Inc., was the owner of real property upon which the defendant Buckley contracted to do certain construction work.  Westbury Lumber Company furnished materials for the work contracted to be done by Buckley.  Buckley became financially

involved and Westbury Lumber Company refused to furnish materials necessary to complete the job. Thereupon a member of the Brody firm stated to officers of the Westbury Lumber Company that if they " continued to deliver the balance of materials needed on that job he would guarantee payment of what had already been delivered, and what was to be delivered in the future." The Westbury Lumber Company resumed deliveries. Brody & Sons, Inc., while paying for substantially the value of materials furnished subsequent to the promise, did not pay for materials furnished prior thereto. The Court of Appeals held that the Statute of Frauds rendered the oral guaranty of Brody & Sons, Inc., unenforcible. In that case there was no identity of interest whatsoever between Brody & Sons, Inc., and Buckley, whose account was guaranteed, and the agreement was to pay only upon Buckley's default.

There are aspects of the *Richardson* case which resemble the case at bar. The fact situation is discussed at length in the dissenting opinion. We believe that case is distinguishable. The promise there was made to pay the Richardson Press; here there is no promise to pay the plaintiffs. There the promisor, while a large stockholder of the publishing company, was not the sole stockholder; here the promisors wholly own the corporation. In the *Richardson* case the court said, speaking of the promisor: " It was his desire to have the plaintiff continue to issue ' Dogs in America ' and perhaps it was a benefit to him to have the periodical appear regularly without a change of publishers. Thus the element of a new consideration moving to him was present. But his beneficial interest was at best remote."

In the case at bar there is no question as to the primary, proximate interest of the promisors. Furthermore, it appeared in the *Richardson* case that the plaintiff there continued to supply the publishing company for six months after the promisor repudiated liability, making it clear that the plaintiff considered that the primary duty remained with the publishing company. The complaint in the case at bar alleges that the plaintiffs supplied the corporation, relying on the defendants' agreement. As the court said in the *Richardson* case: " The tenor of the entire transaction was that defendant purposed to help out the Oceanic [Publishing] Company and verbally promised to pay its debts." In the case at bar, as we read the complaint, the object of the agreement was to aid the defendants by giving them time to work out a method of financing one of their wholly-owned creatures.

We do not doubt that the corporation could have sued to enforce the benefit accruing to it under the contract between the plaintiffs

and the defendants, as alleged in the complaint. It is thus evident that the defendants' promise was independent of and not collateral to any debt of the corporation.

Should the defendants be permitted to repudiate their promise, they will have been enabled to perpetrate a fraud on the plaintiffs.

For the reasons indicated we think the complaint sets forth a good cause of action not barred by the Statute of Frauds, and the plaintiffs should be permitted to develop the factual situation.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion to dismiss the complaint denied, with leave to the defendants to answer within twenty days from service of order with notice of entry thereof, upon payment of said costs.

O'MALLEY and UNTERMYER, JJ., concur; TOWNLEY and GLENNON, JJ., dissent and vote to affirm.

TOWNLEY, J. (dissenting). Plaintiffs, as surviving partners of a company in liquidation, have brought this action to recover from the defendants $45,771.17 which they claim as damages for the breach of an alleged contract made between the company in liquidation and the defendants. The Statute of Frauds is pleaded as a bar to the complaint. The issue must be decided in accordance with the exact allegations made therein.

The plaintiffs allege that during 1937 the defendants owned or controlled substantially all the stock of The Review of Reviews. Said corporation published various magazines requiring large quantities of paper. In June, 1937, The Review of Reviews Corporation acquired " The Literary Digest." Defendants and their associates thereafter prepared a proposed budget which showed that the corporation would incur a deficit of approximately $287,650 for the period from July 15, 1937, to January 15, 1938. On July 18, 1937, defendants informed the plaintiffs that they would place the corporation in funds to finance the anticipated deficit and requested the plaintiffs to continue to sell paper to the corporation and extend to it a ninety-day credit so that the defendants could have more time to consider in what manner to advance the funds.

The precise allegation of substance in this complaint found in paragraph sixth reads as follows: " The defendants represented to and agreed with the plaintiffs that if the plaintiffs would continue to. sell paper to The Review of Reviews Corporation and would agree to extend such credit that the defendants would advance to The Review of Reviews Corporation sufficient moneys for that corporation to pay for said paper and to meet any deficit in its operations."

It is alleged that plaintiffs acted in reliance upon this promise, that they agreed to sell paper and extend credit to the corporation and did in fact do so. Defendants failed to carry out the agreement with the result that bills against the corporation remained unpaid in the sum of $63,926.22. On or about March 17, 1938, the corporation changed its name to The Literary Digest, Inc., and filed a petition for reorganization in the United States District Court. It was, however, thereafter adjudicated a bankrupt and was liquidated. Plaintiffs received from the corporation on their claims in the bankruptcy $18,155. The claim herein is for the balance.

The precise promise alleged is that in consideration of plaintiffs continuing to sell paper to The Review of Reviews Corporation and extend credit, the defendants " would advance to The Review of Reviews Corporation sufficient moneys for that corporation to pay for said paper and to meet any deficit in its operations." We think that the Court of Appeals has passed upon similar situations with such clarity that there is no room for questioning the correctness of Special Term's ruling. In *Richardson Press* v. *Albright* (224 N. Y. 497) suit was brought on a balance of approximately $4,000 alleged to be due for materials furnished to Oceanic Publishing Company. It was alleged that the defendant Albright, who was a large stockholder in that company, made certain promises. Judge POUND described the nature of the alleged agreement as follows (p. 500):

" The parties met on March 4, and Aberle, plaintiff's representative, testifies as follows:

" ' I met Mr. Albright on that morning, and Mr. Albright stated to me in substance — at least he said directly, " I am now in charge of the Oceanic Publishing Company. I will run it hereafter, Mr. Vandergrift has withdrawn." He inquired about the size of the account and I had a statement with me, which I showed him. The exact figure I haven't here now. It was something like $3,000. We discussed the thing generally, and he said, " Well, you can't expect me to pay all of this." He says, " I will agree to pay you $1,500 in three payments, $500 weekly. I will further agree to pay each issue hereafter in cash, before you send it out." This I want to say because we had notified the publishing company that we would not publish hereafter unless the cash was in evidence. That was really in answer to our request. Mr. Davidson, the treasurer of the company, was then present in the office. I asked Mr. Albright to give me this in writing, and he said, " No, I am an honorable man, my word is my bond. Besides, you have Davidson here as a witness." ' It later appeared that the money was to be

forwarded by defendant to Mr. Davidson, the treasurer of the Oceanic Company."

The testimony just quoted is strikingly like the allegation in this complaint. Albright was to furnish money to the corporation of which he was a stockholder so that the corporation could discharge its debts. The court held that Albright's financial interest was at best remote, that the principal debt was not extinguished by the promise and that credit was still given and to be given to Oceanic Publishing Company. A precisely similar relationship exists under the allegations of the complaint herein. Judge POUND said: " The tenor of the entire transaction was that defendant purposed to help out the Oceanic Company and verbally promised to pay its debts." We can find no distinction between Judge POUND's conclusion and the precise words of the complaint quoted above. The Court of Appeals finally said: " When the primary debt continues to exist, the promise of another to pay the debt may be original or it may not be, but it is regarded as original only when the party sought to be charged clearly becomes, within the intention of the parties, a principal debtor primarily liable. If we pick a few phrases from the context, we may draw the conclusion that defendant intended to assume such a relation to plaintiff, but on all the evidence we find but one principal primary debtor and that is Oceanic Publishing Company. The ancient purpose of the Statute of Frauds was to require satisfactory evidence of a promise to answer for the debt of another person and its efficacy should not be wasted by unsubstantial verbal distinctions."

In *Witschard* v. *Brody & Sons, Inc.* (257 N. Y. 97) the Court of Appeals had occasion to consider an oral promise by a member of an incorporated firm that had entered into a contract with a builder to have certain building done on its premises, to the effect that if a lumber company continued to deliver material on the job, " he would guarantee payment of what had already been delivered, and what was to be delivered in the future." The court said: " The fact that the Westbury Company, in continuing its deliveries to Buckley, at the request of the Brody company, supplied a consideration for the latter's promise is not sufficient to make the statute inoperative. A promise to guarantee the account of another, like every promise, requires the support of a consideration paid or promised, in order that an enforceable contract may have been formed. To say that the payment of a consideration removes an oral contract of guarantee from the application of the statute is to say that the statute can never operate, for there is no such thing as a contract without consideration." The Court of Appeals then quoted section 475 of 1 Willis-

ton on Contracts [1920], to the following effect: " Contrariwise if as between them the original debtor still ought to pay, the debt cannot be the promisor's own and he is undertaking to answer for the debt of another."

It is true that this case comes up on the pleadings but there is no rule that the Statute of Frauds can only be applied after a laborious trial. It is quite apparent that this was a promise in effect to keep The Review of Reviews Corporation in funds so that it might pay all its debts. The promise had no force and effect so long as that corporation honored its own obligations and within the authorities above discussed there can be no doubt but that the defendants herein did not become primary debtors on any accounts furnished to The Review of Reviews Corporation.

The order should be affirmed, with twenty dollars costs and disbursements.

GLENNON, J., concurs.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with leave to the defendants to answer within twenty days after service of order on payment of said costs.