ALMOND v. HART et al.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1899.)

STATUTE OF FRAUDS—CONTRACT TO PAY DEBT OF ANOTHER.

　　Where owners, who were building a house, promised laborers, employed by a contractor to work thereon, that the owners would see that the laborers should be paid on their continuing to work, which they did, and the owners subsequently made part payments to the laborers for their services, the owners were liable for the laborers' services, as the contract with them was an original undertaking, and was not dependent upon the original contractor's failure to pay the laborers, within the statute of frauds.

　　McLennan, J., dissenting.

Appeal from trial term, Jefferson county.

Action by John Almond against William Hart and others. From a judgment for defendants, entered on a nonsuit against plaintiff, he appeals. Reversed.

One Phippin had a contract with the defendants to perform certain work for them in constructing a building. Phippin employed the plaintiff and his assignor to work on this job. When they went to perform the labor, they met the defendant Charles G. Hart, and Kieff testified the following conversation occurred: "As soon as we got there, I met Grant Hart. I asked him if there was money enough left in the job to pay us. I understood that Phippin had it by contract. He said there was money enough, and to go ahead and do the work; that he would see we got our pay. After that we went on, and did the work. * * * The defendant said there was money enough left in

the job to finish it. 'Go ahead and finish the work, and I will see that you get your pay.' He guarantied our pay there. * * * I remember the time I went to Brownville. I saw Hart as soon as I got there. I talked with him before I did any work. I told him that Phippin had sent us down there, and asked him if there was money enough left in the job to pay us. I meant to ask him if there was money enough left there to do the work. The idea was to ask whether there was money enough yet unpaid to Phippin on the contract. I wanted to know whether Phippin had overdrawn or not, as his work progressed; and he said there was enough; to go ahead; that he would see we got our pay. Both Hart and son talked alike. * * * At different times both the defendants told us they would pay us. They told us to go on, and do the work; they would pay us. * * * Hart told us that he would see we got our pay. Every time I spoke to him about it, he said that we would get our pay; to go ahead, and do the work, and not worry." The plaintiff, in his testimony, said: "We commenced at the buildings for a while, and got to talking, and I spoke to the young man Hart. I asked him how the job was; if there was money enough in the job to finish it. He said there was, and he told us to go to work, and he would see that we got our pay. That was the first day that we were there. Afterwards I saw William Hart. I had a talk with him several times. He said the job was all right; to keep on to work. He guarantied our pay. Both of them guarantied our pay. * * * When I first went down there to work, I said that I could not work on the job unless I was sure I would get my pay for it. Hart told me to go on to work. I don't recollect any more than what I have said." One of the defendants paid each of these carpenters five dollars to apply on his claim. After the completion of the work, the workmen caused a mechanic's lien to be filed, and they testified this was done at the request of the defendants; but the lien was never foreclosed. Kieff assigned his claim to the plaintiff.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

James A. Ward, for appellant.
Brown, Carlisle & Hugo, for respondents.

SPRING, J. A nonsuit was granted, and the plaintiff is therefore entitled to the most favorable construction of his case which the evidence warrants. A fair rendering of it is that he and his assignor were engaged by Phippin to work on the defendants' building; that about the time they began their work they inquired of one of the defendants in respect to their pay; that he told them to go ahead, and do the work, and he would see them paid. During the progress of the work the other defendant told them to keep to work, and not to worry about their pay. The defendants were the owners of the building which was undergoing construction, and were, consequently, interested in the prosecution of the work. They assumed to be responsible to these men, and in reliance upon that promise the labor was performed. This was not a collateral undertaking. It was not made dependent upon Phippin's failure to pay. It was an unequivocal agreement to become primarily liable, or at least was sufficient to carry the case to the jury. In construing promises of this kind, the fact that the promise is made by one having a pecuniary personal interest in the transaction is often controlling in stamping it as an original undertaking. Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826. In that case the plaintiff was foreman of a mining corporation, of which the defendant was the substantial owner. The plaintiff complained to

him that he was not receiving his pay, and the defendant told him to go on as before, and he would see that he got every dollar of his money. "He [plaintiff] said to Mr. Davis that, if he would guaranty him to be paid, he would continue to work, and Davis said he would see him paid." The court, in determining this was not a promise to answer for the debt of another, and giving significance to the interest of the defendant in the rendition of services, say:

"But cases sometimes arise in which, though a third party is the original obligor, the primary debtor, the promisor has a personal, immediate, and pecuniary interest in the transaction, and is therefore himself a party to be benefited by the performance of the promise. In such cases the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise. As said by this court in Emerson v. Slater, 22 How. 28, 43, 16 L. Ed. 365: 'Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.'"

It is often difficult to determine whether a promise is within the statute of frauds or is an original undertaking. It has, however, become the settled law of this state that, where an owner promises a laborer or material man, who is under contract with the contractor, that if he will continue his work, or furnish the materials contracted for, he will pay him therefor, this is an independent agreement founded on a new consideration, and the owner is liable for whatever is done in pursuance of this agreement, irrespective of the antecedent contract. Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516; White v. Rintoul, 108 N. Y. 222, 15 N. E. 318; Snell v. Rogers, 70 Hun, 462, 24 N. Y. Supp. 379; Bayles v. Wallace, 56 Hun, 428, 10 N. Y. Supp. 191. In Raabe v. Squier, supra, the plaintiffs had entered into an agreement with contractors to furnish materials to be used in the erection of buildings on the premises of defendants. Two installments of these materials had been delivered, but the contractors had neglected to make payment as stipulated in the agreement. The plaintiffs refused to furnish any further materials until they received their pay. With matters in this suspended state, the defendants informed plaintiffs that they wished the buildings finished, and, if the plaintiffs would deliver the rest of the materials, "they would see them paid therefor." The materials were delivered in reliance upon this promise, and upon the trial the referee dismissed the complaint on the ground the promise was a collateral one, and void under the statute of frauds. The court of appeals, in reversing the decision, say at page 87, 148 N. Y., and page 518, 42 N. E.:

"The contractors had neglected to pay the plaintiffs for the material furnished, and they refused to deliver more, as they had the right to do. Under such circumstances the promise was made, and it was in reliance upon the promise that the plaintiffs delivered the rest of the woodwork. The promise thus made was original, and founded upon a new consideration,—that of the goods. It was beneficial, as we have seen, to the promisors; thus bringing the case within the rule stated by Finch, J., in White v. Rintoul, 108 N. Y. 222, 227, 15 N. E. 320, in which he says: 'Where the primary debt subsists, and

was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor, and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor.' "

The test is whether the person sought to be held liable is primarily so, or only in case of the default of another. The precise language used is not always significant. It is the character of the obligation sought to be assumed, and the intention of the parties, and the circumstances surrounding the transaction, which are controlling. Clark v. Howard, 150 N. Y. 232, 44 N. E. 695; Greene v. Burton, 59 Vt. 423, 10 Atl. 575. The fact that the liability against Phippin, the contractor, may remain unaffected by the promise of the defendants does not bring this within the inhibition of the statute. Clark v. Howard, 150 N. Y. 232–239, 44 N. E. 695; Farley v. Cleveland, 4 Cow. 432; Elkin v. Timlin, 151 Pa. St. 491, 25 Atl. 139. The payment of the plaintiff's claim would necessarily result in the liquidation of any demand he might have against the contractor, but that has no effect on the defendants, for their liability rests upon a consideration moving to them, which was the work on their building, and for their benefit; and the ulterior effect that their unequivocal promise to pay might have upon the original demand is unimportant, as their promise is also an original one, entirely independent of the one made with the contractor. The distinction between the two classes of promises is thus stated in Beach on the Modern Law of Contracts:

"The terms 'original' and 'collateral' promise are used to distinguish between the cases where the direct and leading object of the promise is to become the surety or guarantor of another's debt and those where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to promote some interest or purpose of his own." Section 570.

In this case the plaintiff and Kieff took the precaution to see the owners relative to their pay. The defendants urged them to go on with the work, and were explicit in assuring them that the pay would be forthcoming. The defendants assumed that burden without reservation. They did not guaranty Phippin would pay, but personally undertook to see that payment was made. There was no contingent liability. There was no suretyship in their promise. They were the owners. The benefit of the services accrued to them. That it was the intention of the Harts to be the paymasters is supported by the fact they paid each man five dollars. That is a circumstance confirmatory of the character of their promise. Floyd v. Wise (City Ct. N. Y.) 17 N. Y. Supp. 725.

The nonsuit was error, and the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, J., who dissents.