R. & L. CO. v. METZ.   (No. 6604.)

(Supreme Court, Appellate Division, First Department.   December 31, 1914.)

1. FRAUDS, STATUTE OF (§ 33*)—AGREEMENT TO PAY FOR DEBT OF ANOTHER.
    An oral agreement of the indemnitor of a surety of a contractor to
    carry mail to pay for materials to be delivered and repairs to be made
    on vehicles used by the contractor in the performance of his contract is
    not within the statute of frauds as a promise to pay the debt of another.
    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–
    53, 56; Dec. Dig. § 33.*]

2. CONTRACTS (§ 71*)—CONSIDERATION—ADEQUACY.
    A promise by an indemnitor of a surety of a contractor to pay for ma-
    terials to be delivered and repairs to be made on vehicles necessarily
    used by the contractor in the performance of his contract, in considera-
    tion of the person furnishing the materials and making the repairs agree-
    ing to refrain from enforcing the liability of the contractor and retaking
    the vehicles, is supported by a sufficient consideration.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 295, 296, 298,
    316–324; Dec. Dig. § 71.*]

3. FRAUDS, STATUTE OF (§ 153*)—PLEADINGS.
    A mere allegation in a defense that the parol contract sued on is
    within the statute of frauds is not available, where the only contract
    pleaded is not within the statute as shown by the complaint, not denied.
    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 367;
    Dec. Dig. § 153.*]

4. FRAUDS, STATUTE OF (§ 33*)—PAROL AGREEMENTS—COLLATERAL PROMISES.
    A parol agreement by an indemnitor of a surety of a contractor to
    carry mail, made to a creditor of the contractor, whereby the indemnitor
    agreed to pay a sum to be determined by and equal to the indebtedness
    owing by the contractor at a future date, and after the ascertainment of
    the amount to pay part of it personally for a consideration moving to
    him, is not within the statute of frauds as a collateral promise to pay
    the debt of another.                                         °
    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–
    53, 56; Dec. Dig. § 33.*]

    Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Action by the R. & L. Company against Herman A. Metz. From an
interlocutory judgment sustaining demurrers to separate defenses, de-
fendant appeals. Affirmed, with leave to defendant to amend on pay-
ment of costs.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, DOWLING, and HOTCHKISS, JJ.

Isaac H. Levy, of New York City (Almuth C. Vandiver, of New
York City, on the brief), for appellant.

Henry A. Rubino, of New York City, for respondent.

LAUGHLIN, J.   The complaint sets forth two causes of action,
and the defendant pleads two separate defenses to each of them, all
based on the statute of frauds. We concur in the views, well expressed,
in the opinion of the learned justice at Special Term; but we deem it
advisable to state the case more fully, and to cite some authorities, not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cited in the opinion or by counsel, which we deem more in point than those cited.

The plaintiff alleges that on the 10th of February, 1909, the New York Mail Company entered into an agreement with the United States whereby it undertook to transfer the mails in the borough of Manhattan, New York, for a period commencing that year and terminating on the 30th of June, 1913, and for a period thereafter in the discretion of the Postmaster General, until a new contract should be made, but not exceeding six months; that the Mail Company was required to and did furnish a bond, with the American Surety Company as surety, in the sum of $500,000, for the faithful performance of the contract, and the defendant entered into an agreement with the Surety Company, as an inducement to it to become surety, to indemnify it and save it harmless, and that said bond and indemnity agreement are still in full force and effect; that said Mail Company carried the mails pursuant to said agreement until the 31st day of August, 1913, at which time the government made a new contract with another party; that the Mail Company, to enable it to perform its agreement for carrying the mails, was obliged to purchase specially constructed motor trucks, and that it purchased from the plaintiff, during the year 1912 and the early part of 1913, 65 motor trucks for such use and gave its notes therefor, secured by a chattel mortgage, dated November 11, 1912, on 37 of the trucks, by which it was agreed, among other things, that if any of the notes or renewals thereof should not be paid at maturity, or if any of the trucks should be sold or otherwise disposed of without plaintiff's consent, or if for any cause the plaintiff should deem the security in danger, it should have the option to declare all unpaid notes due, and to take possession of the trucks and sell the same, and apply the proceeds on the indebtedness, and on the 18th day of December, 1912, it executed a chattel mortgage on 20 of the other motor trucks as security for other like notes; that on the 23d day of December, 1912, plaintiff loaned to the Mail Company 7 additional trucks on its agreement to return them on demand; that prior to the 16th day of April, 1913, plaintiff sold and delivered to the Mail Company parts of motor trucks and equipment for use on said motor trucks, and performed work, labor, and services in repairing the motor trucks, at the agreed price of $8,823.24; that on and prior to the said last-mentioned date the Mail Company had defaulted in the payment of notes and had disposed of some of the trucks without plaintiff's consent, and plaintiff had thereupon elected to declare all notes then unpaid immediately due and payable, and had so notified the Mail Company, and had duly demanded the return of the loaned trucks and payment of the indebtedness for said material and services; that the Mail Company was without sufficient funds to enable it to perform its contracts, and the defendant, in order to avoid or to minimize his liability on the indemnity agreement, supplied funds to the Mail Company for several months prior to the month of April, 1913; that on the 14th day of April, 1913, the plaintiff was threatening to enforce the liability of the Mail Company to it and to retake the motor trucks, and the defendant, in order to enable it to continue to perform its contracts for carrying the mails, and

thus avoid loss to himself as such indemnitor, in consideration of the plaintiff's promise to refrain ·from enforcing the liability of the Mail Company and from retaking the trucks, and to permit the use of them by the Mail Company, promised and agreed that if he should succeed in obtaining control of the capital stock of the Mail Company, or of a majority thereof, which it is alleged he did on or about April 16, 1913, he would, among other things, prior to the 30th day of June, 1913, "enter into an agreement providing for the payment to the plaintiff of whatever balance should then be due the plaintiff, including any materials or repairs furnished by the plaintiff to said New York Mail Company from April 14 to June 30, 1913," and further agreed that if plaintiff would sell to the Mail Company the trucks theretofore loaned to·it and one additional truck "he would cause" it "to make, execute, and deliver such instruments as the plaintiff desired with reference to the said seven motor trucks and the said additional motor truck"; that plaintiff refrained from retaking the trucks and from enforcing the liability of the Mail Company, and permitted the use of the trucks' as contemplated; that the Mail Company was indebted to the plaintiff on the 30th of June, 1913, in the sum of $66,666.37, and on the 10th of July thereafter a further agreement was made between plaintiff and defendant, whereby plaintiff agreed to permit the Mail Company *and the defendant* to use said motor trucks until August 31, 1913, the final date of the expiration ·of the contract for carrying the mails, and to enter into an agreement with a corporation to be organized by defendant under the name of Interstate Express Company, and to sell the trucks at public auction, and, if it bid them in, to sell them to the new · company, and whereby the defendant agreed "that he would pay the plaintiff the sum of $66,666.37," by incorporating said new company before August 30, 1913, and by having it agree to take over "said motor trucks and parts" *after* said last-mentioned date, and that at the time of the delivery of the motor trucks he would cause the new company to make and deliver to the plaintiff its notes, indorsed by him or by another acceptable to plaintiff, and would cause it to execute and to deliver to plaintiff, as security for the payment of said notes, a conditional bill of sale of said motor trucks, and that he would at the same time pay the plaintiff in cash the balance of said sum of $66,666.37, together with interest thereon from the 14th day of July, 1913, to the date of payment. The plaintiff further alleges that the defendant caused the incorporation of the new company as agreed, and plaintiff sold the motor trucks, and bid them in, and tendered delivery thereof, excepting in so far as tender thereof is alleged to have been waived, and has in all respects performed its agreement, but that the defendant has violated and refused in all other respects to keep and perform his agreement, to the damage of the plaintiff in the sum of $66,666.37.

The second cause of action is to recover the sum of $2,634.48, the agreed price and value of certain "parts and accessories for said motor trucks" and necessary repairs, which the plaintiff on the 10th day of July, 1913, agreed to deliver and to make in consideration of defendant's promise then made to pay it therefor, and which plaintiff did deliver and make pursuant to said agreement.

[1-3] It is quite clear under the decisions that the defendant's agreement, made in advance and based on a good and sufficient consideration flowing to him personally, to pay for the material to be delivered and repairs to be made, on which the second cause of action is based, was not within the statute of frauds. Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516; Schwoerer & Sons, Inc., v. Stone, 130 App. Div. 796, 115 N. Y. Supp. 440, affirmed 200 N. Y. 560, 93 N. E. 1116. In Raabe v. Squier, supra, it was held that an agreement, by a party interested in having another perform a contract, *to guarantee payment,* and to pay if the party to whom materials were to be furnished and delivered "would not," was not within the statute. The facts showing the defendant's interest in the performance of the Mail Company's contract are realleged in the second count. It is therefore quite clear that the second cause of action as alleged is not within the statute of frauds, and there being no denials of the allegations of the complaint in the defenses thereto, or attempt to plead a different contract, the mere allegation that the contract was within the statute of frauds is of no avail, for the only contract is the one pleaded and thus admitted. See Brookline Nat. Bank v. Moers, 19 App. Div. 155, 45 N. Y. Supp. 997.

[4] No question is now presented with respect to the *extent* of the plaintiff's right to recover, or with respect to whether the contract alleged in the first count was sufficiently definite to be valid and enforceable in its entirety, and we express no opinion thereon.- We have only to decide whether such a contract, assuming it to be otherwise valid, falls within the statute of frauds. I am of opinion that the defendant's agreements were not collateral to the promises and agreements of the Mail Company, or of the company to be organized, and to answer for their debts or default, or the debt or default of either of them, but were original agreements on his part with the plaintiff originally to pay a sum of money to be determined by and to equal the indebtedness owing by the Mail Company at a future date, and, after the amount had been ascertained, to pay part of it personally for a consideration moving to him as well as to the Mail Company. It was either an agreement on his part to assume the obligation of the Mail Company, or to become a primary debtor with it, which makes the case indistinguishable in principle from the authorities holding that a contract to pay for material to be sold and delivered to another is not within the statute of frauds, and no distinction appears to be made by the authorities between an agreement to pay an antecedent debt and indebtedness to be created subsequent to the promise. Raabe v. Squier, supra; Schwoerer & Sons, Inc., v. Stone, supra; F. N. Bank v. Chalmers et al., 144 N. Y. 432, 39 N. E. 331; White v. Rintoul, 108 N. Y. 222, 227, 229, 15 N. E. 318; Richardson Press v. Vandergrift, 150 N. Y. Supp. 238 (decided December, 1914, 1st Dept.); Brookline Bank v. Moers, supra. See, also, Mechanics' & Traders' Bank v. Stettheimer, 116 App. Div. 198, 101 N. Y. Supp. 513.

It follows, therefore, that the interlocutory judgment is right, and should be affirmed, with costs, but with leave to defendant to amend, on payment of the costs of the appeal and of the demurrer.

McLAUGHLIN, DOWLING, and HOTCHKISS, JJ., concur. INGRAHAM, P. J., dissents.