VOSKA, FOELSCH & SIDLO, Inc., v. RULAND.

(Supreme Court, Appellate Division, First Department. May 5, 1916.)

1. FRAUDS, STATUTE OF &⇒17—PROMISE TO ANSWER FOR DEBT OF ANOTHER.
    Where the vice president of a realty company, engaged in renovating a building, promised to pay a subcontractor for marble work by stating, "If the * * * company is not going to give you a check, I am going to give you my personal check," the subcontractor could not recover on such promise, as to money already earned when it was made, without violating the statute of frauds.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 13, 16, 17; Dec. Dig. &⇒17.]

2. GUARANTY &⇒16(3)—CONSIDERATION—SUFFICIENCY.
    Where the subcontractor for marble work on a building in course of renovation was about to quit and leave the work unfinished, when the vice president of the renovating company stated that, if the company would not give the contractor a check, he would do so, the vice president's interest, as a stockholder of his company, that the work should not be suspended, was sufficient consideration for his promise to pay the marble contractor for the work remaining to be done.

    [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 16; Dec. Dig. &⇒16(3).]

Appeal from Trial Term, New York County.

Action by Voska, Foelsch & Sidlo, Incorporated, against Irving Ruland. From a judgment for plaintiff, and an order denying motion for new trial, defendant appeals. Judgment modified, by reducing the recovery, and, as modified, affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

Noah A. Stancliffe, of New York City, for appellant.
Otto C. Sommerich, of New York City, for respondent.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SCOTT, J.   In the year 1913 a corporation known as the Forty-First Street Realty Company, of which defendant was a stockholder and the vice president, was engaged in renovating a building at Forty-First street and Broadway in the city of New York.   The property was incumbered by a large purchase-money first mortgage, and reliance seems to have been had upon a second mortgage to raise the funds necessary to be used in the work of renovation.   In July, 1913, the Realty Company entered into a contract with plaintiff for certain marble work.   The original contract was for $6,231, and the amount payable was increased by subsequent orders to $8,487.35.   It was agreed that 85 per cent. of the money earned should be paid as the work progressed, the remaining 15 per cent. being payable when the work had been completed to the satisfaction of the architect.   The company seems to have been dilatory in making payments almost from the beginning, and complaints from the plaintiff were frequent.   These complaints were usually addressed to the defendant, who assumed and exercised very active supervision of the work.   Finally a time came in January, 1914, when plaintiff appears to have become apprehensive that the company would default in making the final payments, and on January 16, 1914, it decided to withdraw its workmen and quit the work.   Then occurred a conversation between plaintiff's president and defendant, as the former testifies and as the jury have found, out of which the plaintiff attempts to spell out a separate independent promise on the part of defendant to pay to plaintiff "all moneys due and to become due" under the aforesaid agreement.   At the time this promise is alleged to have been made there was due to plaintiff, for work already done, about $2,100.   After the promise, and in alleged reliance thereon, the plaintiff did work and furnished materials to the value of about $415.   The last item of work was done and the last item of material furnished on January 25, 1914, and a mechanic's lien against the property was filed on February 21, 1914.

The promise relied upon, according to plaintiff's version, which we accept for the purpose of this appeal, was oral, and took place after plaintiff had threatened to quit the work and defendant had urged him not to do so.   Plaintiff's president testified that:

On January 16th defendant "asked me to go ahead and complete the work, and that he guaranteed I will get the money from the Forty-First Street Company that he is going to get me his check."

He further testified that on the following day defendant said:

"And I cannot afford any delay.   I have too many bonds, and I guarantee you that you will get every dollar coming to you for all the work; and if the Forty-First Street Company is not going to give you a check, I am going to give you my personal check."

The precise question involved in this appeal is whether or not this promise is obnoxious to the statute of frauds, as a promise to answer for the debt, default, or miscarriage of another, not having been reduced to writing, and no note or memorandum thereof in writing having been signed or subscribed by defendant.   The trial court held that it was not within the statute, and that, if defendant made the promise

as alleged, he was liable for the debt. The appeal challenges the correctness of this ruling.

The question when a promise, made under circumstances similar to those presented in the principal case, is within and when without the statute has been much discussed. The much-cited case of White v. Rintaul, 108 N. Y. 222, 15 N. E. 318, reviewed the course of the decisions down to the year in which it was decided (1888), and laid down the following rule:

"Where the primary debt subsists and was antecedently contracted, the promise to pay is original, when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment irrespective of the principal debtor."

In that particular case the debt was evidenced by certain promissory notes, not yet due when the promise was made, and the condition upon which it was made was that plaintiff would forbear any efforts at their collection after maturity. The consideration for the new promise was found in the facts of such forbearance, and that the promisor was a father of one of the members of the firm giving the notes and a creditor thereof. The same question has arisen more often in relation to building contracts than any others.

In Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516, the plaintiff, as subcontractor, agreed to deliver to the principal contractor for the erection of a building certain materials. Several deliveries were made, for which the subcontractors had not been paid. A final delivery was due, which the subcontractors refused to make until paid for what they had already delivered. The defendants urged the subcontractors to make the final delivery, stating that they were the owners of the building and wanted it finished, and "that if plaintiffs would go ahead and deliver the rest of the material they would see them paid therefor; that if Squier and Whipple [the principal contractors] did not pay they [the defendants] would take it out of the amount going to them, and would pay the plaintiffs." This was held to be a valid, original, and independent promise as to the material delivered after the promise was made; the court taking pains to point out that the question of liability to pay for the material delivered before the promise was made did not enter into the case, having been separately paid for.

Almond v. Hart, 46 App. Div. 431, 61 N. Y. Supp. 849, also arose under a building contract in which the owners of the building were held liable upon an independent promise to pay a subcontractor if he would continue at work. In that case the court found the promise to be a direct and unequivocal one to pay the subcontractor, and that it was not conditioned upon the failure of the principal contractor. The court said:

"The test is whether the person sought to be held liable is primarily so, or only in case of default of another. The precise language used is not always significant. It is the character of the obligation sought to be assumed, and the intention of the parties, and the circumstances surrounding the transaction, which are controlling."

In Schwoerer & Sons, Inc., v. Stone, 130 App. Div. 796, 115 N. Y. Supp. 440, affirmed 200 N. Y. 560, 93 N. E. 1116, the promise relied

upon was absolute and unconditional, and the defendant's interest in seeing the contract performed furnished ample consideration. As the court said:

"It was an original promise founded on a new consideration, which was work thereafter to be performed and materials thereafter to be furnished."

In R. & L. Co. v. Metz, 165 App. Div. 533, 150 N. Y. Supp. 843, affirmed 215 N. Y. 695, 109 N. E. 1091, in which the question arose on demurrer to the complaint, the promise alleged was direct and unconditional, and founded upon a new and independent consideration.

The only one of these authorities in which the promise was made conditional upon a failure of the original contractor to pay was Raabe v. Squier, supra, and in that case the promise was enforced only as to work and materials thereafter to be done and furnished; the theory being that as to such work and materials a new and independent contract had been made, founded on a new consideration.

[1] In the present case the promise testified to by plaintiff's president and relied upon by plaintiff was frankly conditional upon non-payment by the Forty-First Street Company, the original contractors The language is:

"*If* the Forty-First Street Company is not going to give you a check, I am going to give you my personal check."

Although this promise may have been understood by plaintiff to refer as well to the money already earned as to that to be earned in reliance upon it, it is quite clear that it cannot be made effective as to the money already earned without violating the statute of frauds. For that work the Forty-First Street Company was indebted to plaintiff, and defendant's conditional promise to pay it was a promise to pay the debt of another. Being such, and being oral, it was within the statute, even if supported by a sufficient consideration.

[2] As to the money thereafter earned we think a different rule must be applied, on the authority of Raabe v. Squier, supra. The plaintiff was about to quit and leave the work unfinished. It was to defendant's interest as a stockholder in the Forty-First Street Company that the work should not be suspended. This furnished sufficient consideration for an independent promise to pay plaintiff for the work remaining to be done.

Fortunately there is no dispute about the figures, and we are able to ascertain from the plaintiff's own evidence just how much the defendant is liable for upon this theory of the case. The whole amount claimed to be due at the end of the work was $2,515.44, and for this sum, with interest, plaintiff has recovered judgment. Plaintiff's president testified that, of this amount, $415 represented the work done and materials furnished after January 16, 1914, the date on which the alleged promise was made. Plaintiff could not have relied on defendant's promise as to any work done or materials furnished before the promise had been made, and the promise, in the form in which it was made, was valid and binding only as to work done and materials furnished after it was made and in reliance upon it. It fol-

lows that the judgment must be modified, by reducing the recovery to $415, with interest, and, as modified, affirmed, without costs in this court. All concur.