for the purpose of detaching such paper matter as might become adherent to the surface of the upper, or "male" die. The plaintiff testified that she had no sticks at the time of the accident and that they were used only on the fourth "cut," to push the completed cutting from the face of the under die, and that it was not practicable to use them to remove enmeshed paper matter from the upper die. This question was presented very fully at the trial. The defendant produced its machine before the jury. They inspected it and saw it manipulated by various witnesses. In that respect they had a much better opportunity to determine the facts correctly than has this court. We cannot say that their verdict was against the weight of evidence, and especially so in view of the sharp question of the credibility of witnesses presented in the conflict of testimony as it appears in this record.

The judgment and order should be affirmed, with costs.

---

(173 App. Div. 94)

### WINDSOR CONST. CO. v. RULAND et al.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. FRAUDS, STATUTE OF ☞23(2)—PROMISE TO ANSWER FOR DEBT OF ANOTHER.
   Promises, made by stockholders in a company owning a building under repair, to pay the contractor personally for the work, if it would refrain from filing a lien, the contractor thereafter proceeding with and completing the work solely in reliance on such promises, created an obligation not within the statute of frauds.
   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. ☞23(2).]

2. FRAUDS, STATUTE OF ☞33(2)—PROMISE TO ANSWER FOR DEBT OF ANOTHER—CONSIDERATION.
   Promises, made by stockholders in a company owning a building under repair, to pay the contractor personally for the work, if it would refrain from filing a lien, the contractor thereafter proceeding with and completing the work solely in reliance on such promises, created an obligation on the stockholders supported by consideration in their indirect interest as stockholders.
   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 51, 53; Dec. Dig. ☞33(2).]

3. FRAUDS, STATUTE OF ☞158(4)—PROMISE TO ANSWER FOR DEBT OF ANOTHER—SUFFICIENCY OF EVIDENCE.
   In a suit by the contractor for repair work on a corporation's building against the company's stockholders on their alleged promises personally to pay for the work, evidence *held* insufficient to sustain finding that the stockholders made such promises.
   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 376; Dec. Dig. ☞158(4).]

Appeal from Trial Term, New York County.

Action by the Windsor Construction Company against Irving Ruland and others. From a judgment for plaintiff, entered on verdict, and an order denying their motion for new trial, defendants appeal. Judgment and order reversed, and new trial ordered.

See, also, 148 N. Y. Supp. 386.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Noah A. Stancliffe, of New York City, for appellants.
Warren McConihe, of New York City, for respondent.

McLAUGHLIN, J.   On and for some time prior to November 8, 1912, the Forty-First Street Realty Company, a domestic corporation, was the owner of a building at the southeast corner of Broadway and Forty-First street in the city of New York.   The defendants were directors and stockholders of the corporation; Ruland owning 117, Griswold 697, and Brush 337, shares of its capital stock.   Their aggregate holdings were considerably in excess of one-third of the stock issued and outstanding, which amounted to 2,984 shares out of an authorized 3,500 shares.   Brush was president and Ruland vice president of the corporation.   On the date named the Realty Company entered into a contract with the plaintiff, also a domestic corporation, by which the latter agreed, for $90,000 and a commission of $12,000, to make alterations and additions to the building according to certain plans and specifications.   Subsequently other plans and specifications, requiring work not embraced within the contract, were adopted, and extra orders given, so that the cost of the work was largely increased.

The contract provided that every second week plaintiff should submit to the architect written requisitions for the amount advanced by it for labor and materials, and also the amounts due subcontractors. On these requisitions certificates were to be issued by the architect, and payments made by the Realty Company in accordance therewith.   Immediately following the execution of the contract the plaintiff commenced the work, and continued with the same until the repairs were completed, with the exception of a short intermission in August, 1913. The work was completed in January or February, 1914, and the final certificate of the architect issued on February 26th.   Prior to this, and on February 20, 1914, the Realty Company went into bankruptcy, leaving unpaid to the plaintiff the amount due on the final certificate and also a balance on two prior certificates, amounting in all to $16,-323.74, to recover which, with interest, this action was brought.   The plaintiff had a verdict for the amount claimed upon which judgment was entered, from which, and an order denying a motion for a new trial, defendants appeal.

The recovery against the defendants is predicated upon defendants' alleged oral promises, made prior to the completion of the work, that they would be personally responsible for the payment of all moneys thereafter earned by plaintiff under its contract with the Realty Company.   According to the testimony of Morris Levin, plaintiff's treasurer, the Realty Company had failed almost from the commencement of the work to make prompt payments as called for by the contract, and on the 17th of May, 1913, in a conversation with defendant Ruland, he threatened that the plaintiff would withdraw its men from the job and file a mechanic's lien for the amount then due if payments were not made promptly on presentation of the architect's certificates. Other witnesses were produced by the plaintiff, all more or less interested, who testified that thereafter, and especially on May 20, 1913, the defendants Ruland and Brush promised orally, if plaintiff would

proceed with the work and refrain from filing a lien, they would personally pay for the work, and on May 26, 1913, defendant Griswold made a similar promise and assumed a like personal responsibility. Morris Levin further testified that plaintiff, in reliance on these promises, refrained from filing a lien and continued with the work to completion.

[1, 2] Although it is not entirely clear from the record, it is fairly to be inferred from what appears therein that the recovery here represents only work done and materials furnished after the alleged promises were made. If the promises were in fact made, as testified to by plaintiff's witnesses, and the plaintiff thereafter proceeded with and completed the work solely in reliance thereon, they created a valid, original, and enforceable obligation, and were not within the statute of frauds. The interest of the defendants as stockholders in the Realty Company in the completion of the work furnished a sufficient consideration. Voska, Foelsch & Sidlo, Inc., v. Ruland, 158 N. Y. Supp. 780, decided by this court at the April session, 1916, not yet officially reported. But the promises, even though made, would not justify a recovery, unless thereafter the work performed and materials furnished were in reliance upon them.

[3] The defendants denied that they, or either of them, ever made the promises alleged, or any promise that could be construed into a personal obligation. After a careful consideration of the evidence set out in the record, I am of the opinion that the finding of the jury that the defendants made such promises, upon which the plaintiff relied, is against the evidence. The conduct of the parties, and especially the documentary evidence, clearly indicates to the contrary. It appears that the plaintiff pursued precisely the same course after the alleged conversations as it had theretofore. It furnished requisitions to the architect in the same manner, same form, and obtained from him 19 certificates, all addressed to the Realty Company, which were presented to it by plaintiff, and 16 of which were thereafter paid by it. The amount thus paid by these certificates exceeded $50,000. As had been the case before the alleged promises were made, the Realty Company was dilatory in making payments on the certificates, and plaintiff from time to time insisted that such payments should be made, and on several occasions threatened to withdraw its men from the work and file a mechanic's lien if not paid promptly. Indeed, on May 31, 1913, less than a week after Griswold's alleged promise, and only 11 days after the alleged conversations with Ruland and Brush, plaintiff wrote the Realty Company, calling attention to the fact that a balance of $3,251.35 still remained unpaid on the very certificate, nonpayment of which plaintiff claims caused it to exact the alleged promises from defendants, and also that a certificate for $8,552.39, issued on May 29th, was due and unpaid. The letter contained this statement:

"Unless we receive check for the amount of both certificates by Monday, June 2d, we will withdraw all our mechanics from the above-mentioned building until your indebtedness to us is made good, as we are hard pressed by our materialmen, who threaten to file mechanic's liens against said building unless they receive immediate payment."

Neither at the time this letter was written, nor for many months thereafter, did plaintiff make any claim or demand that the defendants, or either of them, personally pay any sum whatever, but, on the contrary, frequently sought their assistance in getting payments from the Realty Company.

It is true plaintiff's witness Levin testified that he had written the defendant Brush, demanding personal payments; but no evidence was produced in support of such testimony, and Brush denies that he ever received such letter, or that any demand was made. The only evidence as to personal demands on Griswold consists of a telegram, dated December 30, 1913, and three letters, dated, respectively, January 10, 21, and 28, 1914. One of these letters and the telegram are not personal demands, while a fair construction of the other two letters would seem to indicate a request that Griswold use his influence to induce the corporation to pay. The same is equally true of the only evidence claimed to show a personal demand on Ruland, viz., a letter dated February 14, 1914. Little or no weight, as it seems to me, can be attached to these communications, when read in the light of the prior conduct of the parties, and especially of the written demands made on the Realty Company on January 15 and 28, 1914. It is highly significant that, out of the many letters claimed to have been written to the defendants, plaintiff did not produce a single one that referred to the alleged promise, or substantiated in any way its present claim. It is incredible, if defendant had, in fact, made the promises alleged, and plaintiff had gone on with the work in reliance upon them, that when subsequent payments were not promptly made its complaints and threats to quit and file mechanic's liens should be addressed solely to the Realty Company, and no effort made to obtain payment from the defendants personally, until January, 1914.

This view is supported by another very significant fact. On January 16, 1914, when the work was substantially completed, Ruland gave to plaintiff a check for $300. On January 19th following he gave plaintiff another check for $200. On January 20, 1914, plaintiff received from the Realty Company $1,000 on account of the balance then due, and out of this payment plaintiff immediately returned to Ruland the amount of the two checks, notwithstanding the fact that at that time there was still due to the plaintiff from the Realty Company, after deducting the $1,000 payment, a sum largely in excess of both checks. In making this repayment the plaintiff pursued the same course it had theretofore pursued in repaying a $3,000 advance made by Ruland early in May, 1913, and several other advances made prior to that time. The defendant, at the time these advances were made, was hard pressed for money, and it is inconceivable, if Ruland had been under a personal obligation to pay plaintiff for this work, it would have returned to him the amount of the $300 and $200 checks. Such amounts would have been retained and applied on the amount then due from Ruland and the other defendants.

But it is suggested in support of the plaintiff's claim that after the promises were made the work was resumed "with renewed vigor

and activity." The suggestion is not sustained by the proof; on the contrary, the opposite appears. The work slackened, rather than increased. In August, 1913, plaintiff practically ceased all work on the building, because it had been advised by the architect that a readjustment of the affairs of the Realty Company was necessary in order to enable it to proceed with its project. Not even at this time did plaintiff indicate that it regarded defendants as its debtors, but started the work some days later upon the assurance of the architect that the Realty Company would promptly pay its then outstanding indebtedness. Indeed, as late as December 5, 1913, it seems plaintiff did not consider that the defendants were personally liable, for on that day it wrote to the Realty Company:

"The work specified in our contract was performed long ago; we have been doing extra work all along. We find it impossible to wait any longer for the long-deferred money due us, and regret to say that unless we get a payment on account of said commissions, including the amount of insurance bill rendered, by Tuesday, December 9, 1913, we will be compelled to file a mechanic's lien against the above-mentioned building for the full amount of our claim, and also commence proceedings to recover what is due us."

When all of the evidence is considered, much of which, as indicated, is documentary, it seems to me it fairly shows that the plaintiff, at all times down to the time the work was completed, did not consider the defendants personally responsible, but looked solely to the Realty Company for compensation. It is certainly too vague, indefinite, and unsatisfactory to justify a verdict that the defendants became legally obligated to pay the plaintiff's claim. The finding that they did so is against the evidence.

Other errors are alleged as to the admission of evidence, but the conclusion reached renders it unnecessary to pass upon them.

The judgment and order appealed from are therefore reversed, and a new trial ordered, with costs to appellants to abide event. Order filed. All concur.