### MECHANICS' & TRADERS' BANK v. STETTHEIMER.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

FRAUDS, STATUTE OF—DEBT OF ANOTHER—ORIGINAL OR COLLATERAL PROMISE.
  Where a bank refused to loan money to a corporation, whereupon the directors orally agreed with the bank that each one would guaranty their proportionate share of the amount of the loan, and the loan was then made, the promise of the directors was within the statute of frauds (Laws 1897, p. 510, c. 417, § 21), as a promise to answer for the debt of another.
  [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, §§ 16, 18.]

  McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Mechanics' & Traders' Bank against Ludwig Stettheimer. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, HOUGHTON, and SCOTT, JJ.

Samuel H. Guggenheimer, for appellant.
Charles Strauss, for respondent.

INGRAHAM, J. The defendant was a director in a corporation known as the "American Beer Cask Company," and was also its secretary and treasurer. This corporation kept an account in the plain-

tiff bank; the president of the bank being a director. At a meeting of
the directors on April 12, 1900, four directors being present, the ques-
tion as to borrowing money for the corporation was discussed, and it
seems that it was proposed to have a note for $2,500 discounted. The
plaintiff's president was present, and stated to the other directors that
the bank would not loan the company any money, as it did not loan
money to corporations. Whereupon the four directors present agreed
that:

"Each one would guaranty their proportionate share for the amount of that
note, or any moneys that would be wanted for the benefit of the American
Beer Cask Company."

The day after this agreement "the note was sent to the bank and
discounted, and went to the credit of the American Beer Cask Com-
pany," and that company drew checks against that amount. This note
was renewed from month to month, but never paid. Subsequently the
bank allowed the beer cask company to overdraw its account so that,
when the account was finally closed on August 22, 1901, there was
$5,115.14 due from the company to the bank. This consisted of the
renewal of the note for $2,500 and $2,615.14 overdrafts. This action
was brought to recover one-quarter of that amount from the defendant
under this agreement.

Mr. Wallach, one of the directors who was present at this meeting
and who joined in this guaranty, testified that in this conversation
the president of the plaintiff "offered to advance the company what-
ever money the company required, provided that we who were there
would be responsible for it"; that he objected to a joint responsibility,
but said, "I am willing to take my share of the responsibility, but I
won't guaranty the whole amount." To this plaintiff's president re-
sponded, "All right, gentlemen." He testified, further, that:

"The statement made by Mr. Schlesinger was that the bank would not, of
course, advance any money to the company, as it had substantially no cash or
convertible assets, but he would loan the money if we would pay it or be re-
sponsible for it to the bank."

The promissory note introduced in evidence was the last of the
several renewals, and was a note of the American Beer Cask Company,
dated August 22, 1901, by which the company promised to pay $2,500
to its own order one month after date.

The only question upon this appeal is whether this promise was with-
in the statute of frauds as being a promise to "answer for the debt,
default or miscarriage" of the American Beer Cask Company. That
statute provides (Personal Property Laws, chapter 417, p. 510, § 21,
Laws 1897) that:

"Every agreement, promise or undertaking is void, unless it or some note
or memorandum thereof be in writing, and subscribed by the party to be
charged therewith, or by his lawful agent, if such agreement, promise or un-
dertaking; * * * (2) is a special promise to answer for the debt, default
or miscarriage of another person."

The difficulty of determining whether a promise to pay a debt is
collateral or original is recognized by many of the authorities in this
state. The question has generally been presented in a case where

there was an existing antecedent indebtedness of some third party at the time the promise was made. That was the situation in Mallory v. Gillett, 21 N. Y. 412. In that case one Haines owed the plaintiff a debt for repairs on a boat, for which the latter had a lien on the chattel. In consideration of the relinquishment of that lien and of forbearance to sue the original debtor, the defendant promised the plaintiff, without writing, to pay the debt at a certain future time. The court held that there was a good consideration for this promise, but that it was to answer for the existing and continuing debt of another, or, in other words, it was a collateral promise. In discussing the liability of the defendant on such a promise, the court said:

"What is a promise to answer for the 'debt or default' of another person? Under this language, perplexing questions may arise, and many have arisen, in the courts. But some propositions are extremely plain; and one of them is that the statute points to no distinction between a debt created at the time when the collateral engagement is made and one having a previous existence. The requirement is that promises to answer for the debt, etc., of a third pesron be in writing. The original and collateral obligations may come into existence at the same time, and both be the foundation of the credit, or the one may exist and the other be created afterwards. In either case, and equally in both, the inquiry under that statute is whether there be a debtor and a surety, and not when the relation was created. The language of the enactment is so plain that there is no room for interpretation, and its policy is equally clear. If A. say to B., 'If you will suffer C. to incur a debt for goods which you will now or hereafter sell and deliver to him, I will see you paid'—the promise is within the statute. This no one ever doubted. But if A. say to B., 'If you will forbear to sue C, for six months on a debt heretofore incurred by him for goods sold and delivered to him, I will see you paid'—is not the case equally plain?"

The opinion then quotes with approval the opinion of Chief Justice Shaw in Nelson v. Boynton, 3 Metc. (Mass.) 396–400, 37 Am. Dec. 148, wherein it is said that one class of cases within the statute is "where the direct and leading object of the promise is to become the surety or guarantor of another's debt." The other class (not within the statute) is "where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own." The opinion also quotes Chief Justice Savage in Farley v. Cleveland, 4 Cowen, 432–439, 15 Am. Dec. 387, as follows:

"In all these cases founded on a new and original consideration of benefit to the defendant or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery."

And after a full review of the authorities, the conclusion is:

"It cannot fail to be seen that nearly all the cases which have been mentioned, in fact all of them which exhibit a promise to pay or answer for the debt of another person, are essentially of one type. With great variety in the circumstances, one controlling characteristic pervades them all. In every instance the consideration of the promise was beneficial to the person promising. This was the feature which imparted to the promise the character of originality, as that term is used with reference to the statute of frauds. * * * These numerous authorities are decisive. They all present examples where the collateral undertaking was founded on a consideration sufficient to sustain the promise, but of no personal concern to the promisor, yet the promises were

void, because they fell within the precise terms and the undoubted policy of the statute of frauds."

And:

"Without pursuing this discussion further, the general rule is that all promises to answer for the debt or default of a third person must be in writing, whether the promises be made before, at the time, or after the debt or liability is created. Such is the rule, because so is the statute of frauds. The statute makes no exception of any promise which is of that character. The courts have made no exceptions, as clearly they should not. But a considerable variety. of undertakings, having points of resemblance and analogy to such promises, have been held not to be within the statute. These may be chiefly, if not wholly, arranged in the following classes: (1) Where there was no original debt to which the auxiliary promise could be collateral; for example, where the promisee was a mere guarantor for the third person to some one else, and the promisor agrees to indemnify him, or where his demand was founded in a mere tort. (2) Where the original debt becomes extinguished and the creditor has only the new promise to rely upon; for example, where such new undertaking is accepted as a substitute for the original demand, or where the original demand is deemed satisfied by the arrest of the debtor's body or a levy on his goods, the arrest or levy being discharged by the creditor's consent. (3) Where, although the debt remains, the promise is founded on a new consideration which moves to the promisor. This consideration may come from the debtor, as where he puts a fund in the hands of the promisee, either by absolute transfer or upon a trust, to pay. the debt, or it may be in his hands charged with the debt as a prior lien, as in the case of Williams v. Leper, 3 Burr. 1886, and many others. So the consideration may originate in a new and independent dealing between the promisor and the creditor; the undertaking to answer for the debt of another being one of the incidents of that dealing. Thus, A. for any compensation agreed on between him and B. may undertake that C. shall pay his debt to B. So A. himself, being the creditor of C., may transfer the obligation to B. upon any sufficient consideration, and guaranty it by parol. If we go beyond these exceptional and peculiar cases, and withdraw from the statute all promises of this nature, where the debtor alone is benefited by the consideration of the new undertaking and the debt still subsists, then we leave absolutely nothing for the statute to operate upon."

I have quoted at length from the prevailing opinion in this case, as it seems to me that it comes nearer to establishing a test to determine just what promises are "original" and what "collateral" than any of the prior cases which are there discussed. In White v. Rintoul, 108 N. Y. 222, 15 N. E. 318, the case of Mallory v. Gillett, supra, was cited as establishing the proposition that the consideration for the new promise, in order to be original, must move to the promisor and be beneficial to him, and it was held that this expression was understood to mean, "not merely some moral or sentimental object, but to relate to a legal interest or purpose tangible by the law and a product of the consideration received from creditor or debtor." It was then stated that this rule had been narrowed and restricted in Brown v. Weber, 38 N. Y. 187, where it was held that a promise might still be collateral even though the new consideration moved to the promisor and was beneficial to him; that the existence of these facts. would not in every case stamp the promise as original, but the inquiry would remain whether such promise was independent of the original debt or contingent upon it. It was then said:

"The test to be applied to every case is whether the party sought to be charged is the principal debtor primarily liable, or whether he is only liable in

case of the default of a third person. In other words, whether he is the debtor, or whether his relation to the creditor is that of surety for the performance of some other person of the obligation of the latter to the creditor."

The case of Ackley v. Parmenter, 98 N. Y. 425, 50 Am. Rep. 693, was then adverted to, and it was then said:

"These four cases, advancing by three distinct stages in a common direction, have ended in establishing a doctrine in the courts of this state, which may be stated with approximate accuracy thus: That, where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor."

I do not understand that there is any distinction between a case where an antecedent indebtedness existed at the time of the promise and a case where the indebtedness is created subsequent to the promise. The liability of the promisor must in each case be determined by the nature of the promise, whether it was to answer for the debt of a third person or whether it was to answer for his own debt. In this case was the note of the beer cask company that was discounted by the plaintiff and the checks of the beer cask company, which were paid by the plaintiff and which created the overdraft, a loan to the corporation, which the defendant and his co-promisors agreed to guaranty or pay if the beer cask company did not? It is undoubtedly true that the money was advanced to the beer cask company in reliance upon the promise of the defendant and his co-promisors to be responsible for the loan, but it was clearly a loan to the company, and not to the promisors. Mr. Wallach testified to the offer made by the plaintiff's president that he would "advance the company whatever money the company required, provided that we who were there would be responsible for it."

The plaintiff's president testified that:

—"The conversation was about borrowing money for the company, and I told them that the bank would not loan the American Beer Cask Company any money, as they do not loan money to corporations. Then they all agreed to loan this money, and each one would guaranty their proportionate share for the amount of that note, or any moneys that would be wanted for the benefit of the American Beer Cask Company."

On cross-examination he said:

—"The amount of money which I say Mr. Stettheimer, in common with others, guarantied to make good to the bank, was such moneys as should be advanced by the bank on notes or overdrafts after that date."

And on the faith of this agreement the plaintiff advanced, not to the promisors, but to the company, and the advances used by the company in the transaction of its business. The subsequent transactions were all between the company and the plaintiff. Its note was discounted by the plaintiff, and was renewed from time to time. Its checks were paid by the plaintiff as presented. The bank could not have collected from the defendant and his co-promisor the amount of this note, which it had discounted until the note became due. The whole course of business shows that it was the company to which the bank advanced the money, and it was the company that was primarily responsible for the amount of the note and of the overdrafts. The promise was to guaran-

ty or be responsible for the amount of the note of the company that the bank discounted, or of the overdrafts made by the company. Within the rule established in this state, this was the company's debt, and the agreement sought to be enforced was an agreement to answer for the company's debt, and not for the debt of the promisors. I think this promise was within the statute, and is therefore void.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

HOUGHTON and SCOTT, JJ., concur. PATTERSON, J., concurs in result.

McLAUGHLIN, J. I dissent. The money in question was loaned to the beer cask company in reliance upon the promise of the defendant and his co-promisors to pay the same, and this seems to be conceded in the prevailing opinion. It was, therefore, an original, and not a collateral, promise. The plaintiff would not have made the loan except for this promise, which does not come within the statute of frauds as being a promise "to answer for the debt, default or miscarriage" of another.

I vote to affirm the judgment.