HUDSON WRECKING & LUMBER CO., Inc., v. ALDRICH.

(Supreme Court, Appellate Term, First Department.    March 20, 1916.)

FRAUDS, STATUTE OF ☞33(2)—DEBT OF ANOTHER—CONSIDERATION.

    Promise of H., a materialman, not to. file a lien, and to furnish the balance of material under the contract with the building owner, S., is not a consideration moving to and beneficial to the mortgagee, A., to take out of the statute of frauds the promise of A., a mortgagee under a building loan contract, to pay S.'s debt to H.; the promise to furnish the balance of lumber not being a new or further consideration, S. not being in default under the contract, so that H. was bound to proceed with it, and the promise not to file a lien not being beneficial to A., so far, at least, as he had already made advances under the building loan contract, the mortgage being on file and taking precedence, and he having no doubts about his rights, and the benefit of future profits on future advances being merely incidental, and not the direct result of H.'s forbearance.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 51, 53; Dec. Dig. ☞33(2).]

    Finch, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by the Hudson Wrecking & Lumber Company, Incorporated, against Spencer Aldrich. From a judgment on a verdict for plaintiff, and from an order denying motion for new trial, defendant appeals. Reversed and dismissed.

Argued November term, 1916, before LEHMAN, BIJUR, and FINCH, JJ.

John J. McBride, of New York City (Anthony J. Ernest, of New York City, of counsel), for appellant.

J. A. Seidman, of New York City, for respondent.

LEHMAN, J.   The complaint herein sets forth that the plaintiff furnished to the Simar Realty Company lumber for use in certain.

---

buildings in which the defendant was interested as a mortgagee under a contract to advance to the Simar Realty Company a sum of money as a building loan; that the Simar Realty Company agreed to pay for this lumber the sum of $1,965, and also agreed that the moneys due or to become due to it from the defendant under the building loan contract and mortgage should be applied to the amount due to the plaintiff for lumber; that, the said Simar Realty Company having failed to pay the said sum of $1,965.49, the plaintiff threatened to file a lien for the materials furnished by the plaintiff as aforesaid; that the defendant, fearing that by the filing of said lien and the commencement of such action by the plaintiff other persons, having furnished labor and materials, would file notices of lien and stop work on said buildings, and that defendant would sustain and suffer damages thereby, represented to the plaintiff that he was in possession of certain moneys due under the building loan, and that he would pay the same to the plaintiff for the materials furnished as aforesaid; that, relying thereon, the plaintiff "entered into an agreement with the said defendant wherein and whereby it was agreed that this plaintiff refrain from filing notice of lien against the said premises for the amount of the purchase price of said lumber hereinabove mentioned, or of any part thereof, and that the said plaintiff refrain from commencing an action for the enforcement thereof, and in consideration thereof the said defendant promised and agreed to pay to the plaintiff the amount of the purchase price of said lumber hereinabove mentioned."

The answer denies the making of this contract and sets up the statute of frauds as an affirmative defense. The trial justice submitted to the jury the issue of whether the defendant had made this contract, and for the purposes of this appeal we must assume that the plaintiff's testimony as to the making of the contract is correct. The only serious question in the case is whether the contract as testified to by the plaintiff is enforceable in spite of the statute of frauds.

The testimony of the plaintiff upon this point is as follows: Its treasurer saw the defendant towards the end of November, after it had delivered all but a small portion of the lumber. At that interview he stated that he understood that the defendant was making or was about to make a building loan on the building. He understood there was some trouble, and payments were being diverted from the owner, and "I thought I would look into the matter, to see if I could be secured or get my money in some way; otherwise, I would be compelled to file a lien. Mr. Aldrich says: 'There is no sense in filing a lien. It would be bad for everybody. It might be bad for you.' I said: 'I won't be in any worse position. There is no building loan contracts on record, and my lien would come ahead of anything that was on record except the mortgages there.' So Mr. Aldrich says: 'Don't file a lien. You wait; when Siegel comes in we will see what can be done about.'" Thereafter he saw the defendant again, and told him that he was to receive 65 per cent. of the amount due him out of the next, or "inclosure," payment under the building loan. "I said we would not deliver any more lumber there unless we knew where we stood." And the defendant answered: "There is no sense

stopping the job now. You might as well go ahead; it will be better for every one concerned. I will pay you your money out of the inclosure payment." Thereafter the plaintiff stated that he would not file a lien, and delivered the small part of the lumber not theretofore delivered.

There is no doubt that the defendant's promise was a promise to pay the debt of the Simar Realty Company, and the primary debt continued to exist concurrently with the promise. Such a promise is original, and not within the statute, only when it is supported by a new and further consideration which "should move *to* the promisor and be beneficial to him." White v. Rintoul, 108 N. Y. 222, 15 N. E. 318. In the same case it is stated, in effect, that the earlier cases establish that the promise must be made primarily to "subserve or promote some interest or purpose of the promisor himself and upon which the respondent very much relies. Nelson v. Boynton, 3 Metc. [Mass.] 396, 37 Am. Dec. 148. That this expression was understood to mean, not merely some moral or sentimental object, but to relate to a legal interest or purpose tangible by the law and a product of the consideration received from creditor or debtor, is apparent from the further current of the explanation."

In this case the only consideration for the promise of the defendant as alleged in the complaint is the plaintiff's promise not to file a lien. Moreover, the promise to furnish the lumber not yet furnished to the Simar Realty Company under its contract was not a new or further consideration, for the original debtor was not at that time in default under its contract, and the plaintiff was bound to proceed with it. The sole question of law in the case is whether the promise not to file a lien on the premises owned by the Simar Realty Company to enforce a debt of that company is a consideration moving *to* the defendant and beneficial to him. There would be no doubt that, if the defendant at that time had any direct interest in the property which would be injuriously affected by the threatened lien, then the promise made by him would be enforceable. In this case, however, the defendant's only interest in the premises as alleged in the complaint was as mortgagee under a building loan contract. His mortgages were, however, already on file, and took precedence over any lien which the plaintiff could file, at least to the extent of the moneys already advanced.

It is urged, however, by the respondent, that the defendant's right to enforce these mortgages was open to doubt, and that by the plaintiff's promise he secured an abandonment of plaintiff's colorable claim to obtain a prior lien. Even if such a benefit could be considered as a sufficient consideration, there is absolutely no evidence in this case that the defendant had any doubt about his rights, or sought from the plaintiff, for his own benefit, any abandonment of a doubtful claim. The evidence shows only that for the sake of all parties he wished to avoid the placing on the property of any lien, whether prior or subsequent to his mortgages. It is also urged that the consideration was beneficial to the defendant and moved directly to him, because under the building loan contract he would obtain certain future profits by reason of future advances which he would lose by reason of the

termination of the contract through the filing of a mechanic's lien. It seems to me that this contention is not sound. Such a benefit, if it exists, is merely incidental, and is not the direct result of the forbearance of the plaintiff, and it is nowhere claimed that the promise of the defendant was made to promote or further any such interest in the building contract.

Judgment should therefore be reversed, with costs, and complaint dismissed, with costs.

BIJUR, J., concurs.

FINCH, J. (dissenting). This is an action on an oral contract to pay for lumber purchased by a third party. At the trial the two main questions presented were: First, whether the defendant ever promised to pay for the lumber; and, second, if he did, whether the promise was such as to take it without the statute of frauds.

The lumber was purchased from the plaintiff on October 26, 1914, by the Simar Realty Company, which was erecting five houses. Defendant had entered into a building loan agreement with the Simar Realty Company on October 14, 1914. The building loan agreement provided for the advancing of $32,500 in seven installments, for the delivery to the defendant of mortgages for this amount, and the immediate maturing of the mortgages in the event of the placing of any lien upon the premises. In addition, it appears that the defendant was to obtain 6 per cent. interest and a 5 per cent. commission on the amount of money loaned. Plaintiff's contract with the Simar Realty Company for the sale of the lumber provided for payment out of the third and fourth installments of the building loan. (The contract is express as to the payment being taken out of the fourth payment, and is ambiguous as to whether it should be taken out of the third payment; but the testimony of the plaintiff shows that it was to be taken out of the third payment also.) Between November 24th and 27th, and shortly before the third installment (the inclosure installment) was paid to the Realty Company, and while there was no default in the payment to plaintiff by the Simar Realty Company, plaintiff's general manager, Butler, called on the defendant and threatened to file a materialman's lien for the lumber furnished. At that time all the lumber called for by the contract (about $1,900 worth) had been furnished, with the exception of from $35 to $71 worth. Butler testified that, when he threatened to file the lien, defendant asked him not to do so, saying it would be bad for everybody, and asked Butler to wait until defendant could confer with the Realty Company. Butler testifies further that, complying with the defendant's request, he did not file a lien. The $35 to $71 worth of lumber was shortly thereafter delivered.

It is a fair deduction from the evidence that the call of Butler upon the defendant, at which call Butler testifies the promise sued on was made, did not take place until the $35 to $71 worth of lumber had been delivered. But whether this was so or not is immaterial here, because so far as the record shows there had been no default in the payments

to the defendant by the Simar Realty Company, and hence any lumber that was delivered was delivered pursuant to the fact that the plaintiff was bound to deliver the same under its contract with the Simar Realty Company, and hence the delivery of this lumber cannot be considered as constituting any consideration. Butler further testifies that, a few days after the alleged promise, he telephoned to the defendant and the latter said he had given the money to the Realty Company to pay plaintiff, and that thereafter the Realty Company did pay plaintiff $500, leaving still unpaid $1,465. Defendant testifies that he had only one conversation with Butler, and that when the latter threatened to file a lien defendant advised him not to do so, but to get an order on defendant from the Realty Company directing payment. Defendant denied that he ever promised to pay for the lumber. Defendant was in part corroborated by two other witnesses, who claimed that they heard one conversation between Butler and defendant, but their testimony is not altogether satisfactory. The strongest corroboration of defendant is the letter written by plaintiff a few days after the alleged promise by defendant to pay for the lumber, in which is stated, "We ask you to please be kind enough to notify us when you are apt to make payment on account of his building loan," apparently for the purpose of obtaining money from the latter company. Butler testifies, however, that the letter was written at defendant's request. The court left it to the jury to say which was the correct version of the transaction between plaintiff and defendant. Since it was entirely a question of the credibility of the witnesses, their finding should be accepted.

The court charged, as a matter of law, that if Butler's testimony was true there was sufficient beneficial consideration moving to the defendant to take the contract out of the operation of the statute of frauds, requiring the contract to be in writing. This presents the important question in this case. Under the authorities it makes no difference whether the debt was antecedently or subsequently contracted. Mechanics' & Traders' Bank v. Stettheimer, 116 App. Div. 202, 101 N. Y. Supp. 513. The inquiry is whether the promisor by the making of the promise becomes a principal debtor, primarily liable, or whether the promisor is only to become collaterally liable. The language of the promise in the case at bar—i. e., "I will pay you out of the inclosure payments"—is sufficient to comprise an original undertaking, and therefore we must look at the surrounding circumstances to see whether it should be construed as an original promise, independent of the original debt, or collateral to it. The controlling circumstances in determining the nature of the promise—that is, whether it is an original promise or a collateral one—is found in the fact that the promisor received, at the time of the making of the promise, not only a consideration sufficient to constitute the promise a binding contract, but that in addition there was consideration beneficial to the promisor and accruing directly to him. The promisor had a mortgage on the premises, and according to the testimony the plaintiff threatened to file a lien and abstained at the request of the promisor. The filing of such lien would have directly affected the interest which the promisor had in

·the premises under his mortgage, and would have caused a complete termination of the building loan agreement, under which he advanced two payments and was to advance five more.

It is not clear from the record whether, when Butler said, "I won't be in any worse position; there's no building loan contract on record, and my lien would come ahead of anything that was on record except the mortgages there"—he referred only to the underlying mortgage on the premises, or to the mortgages which had been recorded under the building loan agreement, and which might be construed as good up to the amount of money advanced under the building loan. In any event, the testimony can be taken as meaning that from the moment of the filing of the lien the proceedings under the building loan would be terminated, and this the defendant admitted. According, also, to the testimony of the defendant, he was to receive 5 per cent. of the amounts advanced by way of compensation for making the building loan in addition to 6 per cent. interest. Within the authorities, these facts are sufficient to hold the promise in this case as an original promise, and not within the statute of frauds.

For the foregoing reasons, the defendant received a beneficial consideration sufficient within the authorities to take the promise out of the statute of frauds. White v. Rintoul, 108 N. Y. 222, 15 N. E. 318; Mallory v. Gillett, 21 N. Y. 412; Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516; Schwoerer v. Samuel H. Stone, 130 App. Div. 796, 115 N. Y. Supp. 440; Alley v. Turck, 8 App. Div. 50, 40 N. Y. Supp. 433.

Judgment and order should be affirmed, with costs.